STATE OF NORTH CAROLINA v. WILLIAM QUENTIN JONES

No. 395A91

(Filed 6 May 1994)

### 1. Jury § 141 (NCI4th) — first-degree murder — jury selection — questions concerning parole

There was no prejudicial error in a first-degree murder prosecution where one of the jurors indicated during jury selection that he did not feel that a life sentence actually meant life and that if sentenced to life defendant would be paroled within fifteen years; the court instructed the jury that they should consider a life sentence to mean life imprisonment and not to take the possibility of parole into account; the first juror indicated that he would have trouble following this instruction and was excused for cause; another prospective juror said he would have trouble following this instruction and was excused for cause; and defendant's attorney requested that he be allowed to ask other prospective jurors whether they could follow the instruction and was refused. The defendant was not attempting to stake out the jury and had a right to inquire as to whether a prospective juror would follow the court's instruction; however, the act of the first two jurors in speaking out and being excused should have signaled the other prospective jurors to so indicate if they were of the

same mind. None did, and it is not likely that they would have done so if the question had been put to them directly.

**Am Jur 2d, Jury §§ 197, 201, 202.**

2. **Criminal Law § 1363 (NCI4th)— first-degree murder— sentencing—mitigating circumstance—sentence for other crimes—not submitted**

The trial court did not err in a sentencing hearing for first-degree murder by refusing to allow introduction of or to submit to the jury as a mitigating circumstance the fact that defendant had been sentenced to a total of sixty years in prison on armed robbery and assault charges to which he had pled guilty. The fact that defendant was serving a prison sentence did not make the defendant less culpable for the murder and evidence of prison sentences being served would not have rebutted evidence that the crimes had been committed.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

3. **Jury § 138 (NCI4th)— first-degree murder—jury selection— questions**

The trial court did not unduly restrict a first-degree murder defendant in the questions he was allowed to ask prospective jurors on voir dire where an objection was sustained to a question dealing with the age of the defendant but defendant was then allowed to ask a question as to how the prospective juror would consider evidence of mitigating circumstances. The juror was bound to have known in the context of the question that the circumstance to which defendant referred was the age of the defendant.

**Am Jur 2d, Jury §§ 197, 201, 202.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

4. **Jury § 141 (NCI4th)— first-degree murder—jury selection— knowledge of parole procedures**

The trial court did not err during jury selection for a first-degree murder sentencing hearing by not allowing defend-

STATE v. JONES

[336 N.C. 229 (1994)]

ant to inquire of prospective jurors regarding their attitudes and knowledge of parole eligibility for a person sentenced to life in prison.

**Am Jur 2d, Jury §§ 197, 201, 202.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

5. **Criminal Law § 1309 (NCI4th) — first-degree murder — sentencing hearing — videotape of murder — admissible**

The trial court did not err in a sentencing hearing for a first-degree murder at a convenience store by admitting into evidence a videotape which included audio and video tracks and showed the robbery and shooting where the State relied on two aggravating circumstances, that the murder was committed for pecuniary gain and that the murder was part of a course of conduct, and the tape provided evidence of both.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

6. **Evidence and Witnesses § 1227 (NCI4th) — confession — interval between coerced confession and second confession**

The Supreme Court declined to reconsider its prior ruling upholding the admission of a second confession following a coerced confession in light of *Arizona v. Fulminante*, 499 U.S. 279.

**Am Jur 2d, Evidence § 537.**

7. **Jury § 217 (NCI4th) — first-degree murder resentencing — jury selection — reservations about death penalty**

The trial court did not err during jury selection for a first-degree murder resentencing hearing where three prospective jurors were removed for cause after expressing reservations about the death penalty. The question posed by the court to each of the jurors was taken directly from *Wainwright v. Witt*, 469 U.S. 412; the answers received were consistent with the prior answers given by the prospective jurors and did not indicate any ambiguity or ambivalence on the part of the jurors; defendant was afforded the opportunity to question two of the jurors and did so in one case; there was no indication that further questioning of the third would have

reached a different result; and the answers of all three clearly indicated their inability to carry out their duties as jurors.

**Am Jur 2d, Jury § 290.**

**8. Criminal Law § 1355 (NCI4th) — first-degree murder — sentencing — mitigating circumstance — no significant history of prior criminal activity — not submitted**

The trial court did not err during jury selection for a first-degree murder resentencing hearing by not submitting the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where defendant had introduced evidence that he was using illegal drugs for several weeks before the murder; he had broken into a Fast Fare "six or seven times" and stolen various articles; he had broken into a pawn shop and stolen several guns; he had sold some of the guns and used one of them to kill the victim in this case; and members of his family testified that he had shoplifted and "hustled" as a child.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**9. Criminal Law §§ 1323, 1352 (NCI4th) — first-degree murder — sentencing — mitigating circumstances — instructions**

The trial court did not err in its instructions in a resentencing hearing for first-degree murder on nonstatutory mitigating circumstances. It is not for the court to determine whether there is or is not mitigating value in the evidence; that remains the province of the jury. Moreover, the instruction did not indicate a requirement of unanimity by the jury on any of the nonstatutory circumstances.

**Am Jur 2d, Criminal Law §§ 598 et seq.; Trial §§ 888 et seq.**

**10. Constitutional Law § 228 (NCI4th) — first-degree murder — resentencing — mitigating circumstances — double jeopardy**

There was no double jeopardy in a first-degree murder resentencing where some of the mitigating circumstances found at the original hearing were not found at this hearing. This hearing was a *de novo* hearing granted at defendant's request; defendant cannot claim he was subjected to a second jury trial.

**Am Jur 2d, Criminal Law §§ 309 et seq.**

**11. Criminal Law § 1322 (NCI4th)— first-degree murder— resentencing—instructions—parole eligibility**

The trial court did not err when instructing the jury during a first-degree murder resentencing hearing by not instructing the jury as to parole eligibility even though the issue was raised during jury selection and in the prosecutor's closing arguments. Parole eligibility is not a proper issue for consideration by a jury in a capital case.

**Am Jur 2d, Trial §§ 100, 890.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**12. Criminal Law § 1363 (NCI4th)— first-degree murder— resentencing—nonstatutory mitigating circumstance— defendant confined for considerable amount of time—not submitted**

The trial court did not err in a resentencing hearing for first-degree murder by refusing to submit the nonstatutory mitigating circumstance that defendant has been confined for a considerable amount of time prior to his sentencing. The fact that defendant had spent a considerable amount of time in jail does not relate to his character, record, or any aspect of the crime.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**13. Criminal Law § 1323 (NCI4th)— first-degree murder— mitigating circumstances—instructions**

The trial court did not err in a first-degree murder resentencing in its instruction regarding mitigating circumstances. Reference to "circumstances found by one or more of you" indicates to all jurors that they should consider each of the circumstances found to exist and the instruction also directs the jurors to consider "the totality of the mitigating circumstances," and requires the jury to be "satisfied beyond a reasonable doubt" that the aggravating circumstances found "when considered with mitigating circumstances found by one or more of you" are sufficiently substantial to call for the death penalty. These phrases all serve to signal reasonable jurors that they must consider and reconsider all of the evidence

in mitigation and all of the circumstances found to have mitigating value before making their final decision.

**Am Jur 2d, Trial §§ 888 et seq.**

**14. Criminal Law § 455 (NCI4th)— first-degree murder— sentencing—prosecutor's argument**

There was no error in a sentencing hearing for first-degree murder where defendant cited two passages in the prosecutor's argument as examples of the alleged dominant theme of the prosecution, that the jury needed to kill the defendant to protect themselves and their loved ones, but, read in context, the first passage was followed by a verbal recreation of defendant's actions in sequence with the actions of others in and around the site of the murder to illustrate the cold calculated thought processes and actions displayed by defendant and rebut the contention in mitigation that he was physically and mentally impaired due to substance abuse, and the point of the second passage was that pecuniary gain placed the value of money above consideration of human life and therefore justified the imposition of the death penalty.

**Am Jur 2d, Trial § 229.**

**15. Criminal Law § 425 (NCI4th)— first-degree murder— sentencing—prosecutor's argument—defendant's failure to offer psychiatric testimony**

There was no error in a sentencing hearing for first-degree murder where the prosecutor argued that defendant did not present a psychiatrist or psychologist to testify in regards to defendant's mental impairment. Defendant had the burden of proving the mitigating circumstances and, since defendant offered no expert testimony in support of those circumstances involving his mental health and condition, commenting on this void and drawing inferences from the absence was not error.

**Am Jur 2d, Trial §§ 244-249.**

**16. Criminal Law § 425 (NCI4th)— first-degree murder— sentencing—prosecutor's argument—comment on nonstatutory circumstance**

There was no error in a sentencing hearing for first-degree murder where defendant contended that he had maintained meaningful relationships while in prison which provided him

STATE v. JONES

[336 N.C. 229 (1994)]

with guidance and positive support and offered letters in support of that nonstatutory mitigating circumstance, but the prosecutor argued that there were other letters not made available to the jury. There was testimony which indicated that the contents of these letters could have been beneficial to defendant; therefore, it is a logical inference that defendant's decision not to introduce them could be due to contents which were detrimental to defendant.

**Am Jur 2d, Trial §§ 244-249.**

**17. Criminal Law § 468 (NCI4th)— first-degree murder— sentencing—prosecutor's argument—defendant's guilty plea**

There was no error in a first-degree murder sentencing hearing where the prosecutor belittled the nonstatutory mitigating circumstance that the defendant pled guilty without any prior promises or concessions, thus insuring the prompt and certain application of correctional measures. The plea of guilty would seem to have little mitigating value in the face of overwhelming evidence and the argument only serves to point out the evidence in an effort to focus the jury on the logical inference.

**Am Jur 2d, Trial §§ 497 et seq.**

**18. Criminal Law § 442 (NCI4th)— first-degree murder— sentencing—prosecutor's argument—jury as conscience of community**

There was no error in a first-degree murder sentencing hearing where the prosecutor during closing arguments made a reference to the jury as the "voice of the community."

**Am Jur 2d, Trial §§ 225 et seq.**

**19. Criminal Law § 442 (NCI4th)— first-degree murder— sentencing—prosecutor's argument—burden of jury**

There was no error in a first-degree murder prosecution where the prosecutor argued that the jury must live up to its responsibilities even if that did not feel good. Defendant contended that the prosecutor's argument lessened the responsibility of the jury, but the Supreme Court read the argument as emphasizing the responsibility and duty of each juror and of the jury as a whole.

**Am Jur 2d, Trial §§ 225 et seq.**

**20. Criminal Law § 468 (NCI4th) — first-degree murder — sentencing — prosecutor's argument — sympathy**

There was no error in a first-degree murder sentencing hearing where the prosecutor argued that the jury should not base its decision on its feelings. Although many of the nonstatutory mitigating circumstances requested by the defendant asked the jury to consider the mitigating value of his background and character, and so necessarily to use their compassion and mercy, a reasonable juror would not have understood the prosecutor's argument as calling for the jury to disregard mitigating evidence simply because it appeals to sympathies. The argument served to reinforce the responsibility of the jury to reach its decision based on the evidence and the law.

**Am Jur 2d, Trial §§ 225 et seq., 497 et seq.**

**21. Criminal Law § 1325 (NCI4th) — first-degree murder — sentencing — instructions — consideration of nonstatutory mitigating circumstances**

There was no error in a first-degree murder sentencing hearing in the court's instruction on nonstatutory mitigating circumstances where the court charged the jury that if it found one or more mitigating circumstances it must consider the aggravating circumstances in connection with any mitigating circumstances found by one or more of them and that, "when making this comparison, each juror may consider any mitigating circumstance or circumstances that juror determines to exist by a preponderance of the evidence." Although defendant contended that the use of the word "may" told the jury that they need not consider mitigating circumstances, the sentence in which the word "may" was used told the jury which mitigating circumstances they may consider, which are those found by a preponderance of the evidence. The jury was unequivocally instructed that they must consider the aggravating circumstances in connection with the mitigating circumstances.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**22. Criminal Law § 1348 (NCI4th) — first-degree murder — sentencing — instructions — definition of mitigating circumstance**

There was no error in a first-degree murder sentencing hearing in the part of the charge which defined a mitigating

STATE v. JONES

[336 N.C. 229 (1994)]

circumstance where defendant contended that the charge given by the court failed to give him the full benefit of relevant mitigating evidence, but, of the points raised by defendant, the court charged specifically on evidence reducing the moral culpability of the defendant without lessening the seriousness of the crime; there was little difference between the statements in the contention that the evidence need not make a killing less deserving of extreme punishment than other first-degree murders, but need only suggest some particular basis for a particular defendant to receive a sentence less than death; and the contention that mitigation need not extenuate or reduce the moral culpability of the crime but need only lessen the seriousness of the murder is not a correct statement of the law.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

23. **Jury § 262 (NCI4th)— first-degree murder—jury selection— opposition to death penalty—use of peremptory challenges**

There was no error in a first-degree murder sentencing hearing where the State used peremptory challenges to remove jurors who expressed reservations about the death penalty.

**Am Jur 2d, Jury §§ 233 et seq.**

24. **Criminal Law § 1327 (NCI4th)— first-degree murder— sentencing—instructions—Issue Four**

The trial court properly instructed the jury in a sentencing hearing for first-degree murder that if they answered Issue Four yes, it would be their duty to recommend the death sentence.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

25. **Jury § 103 (NCI4th)— first-degree murder—sentencing— individual voir dire and sequestration of jury—denied**

The trial court did not abuse its discretion in a sentencing hearing for first-degree murder by denying defendant's motion for individual *voir dire* and jury sequestration.

**Am Jur 2d, Jury § 197.**

26. **Constitutional Law § 371 (NCI4th)— first-degree murder— death penalty—constitutional**

The North Carolina death penalty statute is constitutional.

**Am Jur 2d, Criminal Law § 628.**

STATE v. JONES

[336 N.C. 229 (1994)]

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.

27. **Criminal Law § 1323 (NCI4th)— first-degree murder— sentencing— instructions— sympathy**

The trial court did not commit plain error in a first-degree murder sentencing hearing when instructing the jury on sympathy and mercy. The cited section of the argument does not direct the jury not to consider sympathy or mercy, but rather reminds the jurors that irrelevant, outside, arbitrary factors should not enter into their deliberations.

**Am Jur 2d, Trial §§ 888 et seq.**

28. **Criminal Law § 1373 (NCI4th)— first-degree murder— death sentence— not disproportionate**

The aggravating circumstances for a death sentence for a first-degree murder arising from a convenience store robbery were supported by the record, the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and the sentence was not excessive or disproportionate to the penalty imposed in other first-degree murder cases. The murder was committed in a cold blooded and deliberate way; defendant entered the premises and opened fire without warning, killing one patron and wounding another, apparently intending to so intimidate people in the store that they would not interfere with his plan to rob the store.

**Am Jur 2d, Criminal Law § 628.**

Chief Justice EXUM concurring.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Farmer, J., at the 1 July 1991 Criminal Session of Superior Court, Wake County. Heard in the Supreme Court 16 September 1993.

This case arises from a robbery and shooting at a Fast Fare convenience store in Raleigh on 7 March 1987. The defendant pled guilty to first degree murder, armed robbery, and assault with a deadly weapon with intent to kill inflicting serious injury. He was sentenced to death for the murder, forty years on the robbery charge and twenty years for the assault. The two prison sentences

are to be served consecutively. In *State v. Jones*, 327 N.C. 439, 396 S.E.2d 309 (1990), we found no error in the convictions and sentences on the robbery and assault charges, but ordered a new sentencing hearing on the murder charge pursuant to *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

Some of the evidence at the new sentencing hearing showed that at approximately 11:45 p.m., on 7 March 1987, six people including Edward Peebles and Orlando Watson were in the convenience store. At that time, the defendant entered the store and began firing an Uzi assault rifle. Edward Peebles was killed and Orlando Watson was wounded by the rifle fire. The defendant took the cash register and left the convenience store. A video camera recorded what had happened. The police apprehended the defendant a few minutes later.

The jury found two aggravating circumstances, which were that the murder was committed for pecuniary gain and that it was part of a course of conduct which included the commission of other crimes of violence, and four mitigating circumstances. The jury found that the aggravating circumstances outweighed the mitigating circumstances and recommended the defendant receive the death penalty, which was imposed.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Linda M. Fox, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] The defendant's first assignment of error deals with the refusal of the court to let him ask certain questions of prospective jurors. During the selection of the jury, one of the prospective jurors indicated that he did not feel that a life sentence actually meant life and that if sentenced to life the defendant would be paroled "within fifteen years." The court then instructed the jury pursuant to *State v. Conner*, 241 N.C. 468, 85 S.E.2d 584 (1955), that they should consider a life sentence to mean that defendant would be imprisoned for life and they should not take the possibility of parole into account in reaching a verdict. The juror indicated he would

have trouble following this instruction and he was excused for cause. Another prospective juror then said he would have trouble following this instruction and he was excused for cause.

At this point, the defendant's attorney requested that he be allowed to ask the other prospective jurors whether they could follow the *Conner* instructions as given to them by the court. The court would not allow this interrogation. This was error.

When the juror raised the question of parole, the court properly told him he should not consider it. This does not mean, however, that because the jury cannot or should not consider parole, a party cannot ask the jury whether it will follow the court's instructions in this regard after a prospective juror has raised the question. The defendant has a right to inquire as to whether a prospective juror will follow the court's instruction. *State v. Clark*, 319 N.C. 215, 353 S.E.2d 205 (1987). The defendant was not attempting to stake the jury out as to their potential verdict. *State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980).

The question then becomes whether the error in not allowing this question was prejudicial. We hold that it was not. We note that after one prospective juror had been excused because he said he would have difficulty following the court's instruction, that a second juror spoke out and said he was in the same situation. This juror was then excused. This should have been a signal to the other prospective jurors who were in the box that if they were of the same mind they should so indicate. None of them did. It is not likely they would have done so if the question had been put to them directly. We can conclude from this that allowing the defendant to ask this question would not have produced an answer favorable to the defendant.

[2] The defendant next assigns as error the refusal of the court to submit to the jury as a mitigating circumstance the fact that the defendant had been sentenced to a total of sixty years in prison on the armed robbery and assault charges to which he had pled guilty. The court also excluded from the hearing evidence as to these sentences and the defendant contends this was error. The defendant says this fact was a part of his background and record and should have been submitted to the jury as a mitigating circumstance.

## STATE v. JONES

[336 N.C. 229 (1994)]

We are bound by *State v. Price*, 331 N.C. 620, 418 S.E.2d 169 (1992), *vacated and remanded on other grounds*, --- U.S. ---, 122 L. Ed. 2d 113 (1993), to overrule this assignment of error. In that case, we held that a prison sentence a defendant may be serving for some other crime is not an aspect of the defendant's character or of a circumstance of the offense which may be considered a mitigating circumstance at a sentencing hearing after the defendant has been convicted of first degree murder. It was not error for the court not to submit as a mitigating circumstance the fact that defendant was serving sentences for other crimes.

The defendant also argues under this assignment of error that he should have been permitted to introduce evidence of the sentences he had received in order to rebut the evidence that the crimes had been committed. Evidence of prison sentences being served would not have been evidence the crimes had not been committed and the fact that defendant was serving a prison sentence did not make the defendant less culpable for the murder. Evidence of the prison sentences being served by the defendant was irrelevant. This assignment of error is overruled.

[3] The defendant argues under his next assignment of error that he was unduly restricted in questions he was allowed to ask prospective jurors on *voir dire*. The following colloquy occurred during the questioning of the jury by the defendant:

> Now, back to the mitigating circumstances one moment, okay? When we talk about mitigating circumstances the defendant will introduce, the defendant will introduce things that he contends are mitigating circumstances, things like his age at the time that the crime was committed, things like that.
>
> Do you feel like you can consider the defendant's age at the time the crime was committed or any other thing that we propose mitigating like that and give it fair consideration?
>
> MS. HILL: I object, Your Honor, to the form of the question.
>
> THE COURT: Objection sustained.
>
> Q. Do you feel like whatever we propose to you as a potential mitigating factor that you can give that fair consideration and not already start out dismissing those and saying those don't count because of the severity of the crime and that sort of thing?

A. Well, I think I can consider the mitigating factors, yes.

Q. Well, I don't mean to hash words, but this is real important. Do you think you can fairly consider those mitigating factors?

A. Absolutely.

The defendant contends it was error not to let the prospective juror answer the question to which the objection was sustained.

Assuming it was error to sustain the State's objection to this question, we hold it was not prejudicial to the defendant. The defendant had explained to the jury that he would offer certain evidence, including his age, as a mitigating circumstance. The court then sustained an objection as to the form of the question dealing with the age of the defendant. The defendant was then allowed to ask a question as to how the prospective juror would consider evidence of mitigating circumstances. In the context that this question was propounded, the juror is bound to have known the circumstance to which the defendant referred was the age of the defendant. The defendant was not prejudiced.

[4] The defendant, under this assignment of error, also argues that it was error not to let him inquire of the prospective jurors in regard to their attitudes and knowledge of parole eligibility for a person sentenced to life in prison. We have held that such an inquiry is not permitted. *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909 (1989), *vacated on other grounds*, 494 U.S. 1050, 108 L. Ed. 2d 756 (1990); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). It was not error to refuse to let the defendant make this inquiry. This assignment of error is overruled.

[5] The defendant next assigns error to the showing of a videotape of the incident. There was a camera mounted on the rear wall of the convenience store which was focused on the cashier's area and front door. The tape from the video camera included both audio and visual tracks, so that the words and sounds of the store were recorded as well as the actions occurring therein. The tape ran for approximately eleven minutes and showed the robbery and shooting of the two men.

At the sentencing hearing, the videotape was shown a total of four times. It was shown twice to illustrate the testimony of two witnesses. It was also admitted as substantive evidence and

shown in its entirety without comment. The jury requested during its deliberation to see the tape for the fourth time and it was shown to them without objection.

The defendant contends that because he pled guilty, the showing of the tape was not needed to prove the elements of murder and the tape did not make the existence of any fact that was of consequence to the determination of the action more probable. He says this made the tape irrelevant under N.C.G.S. § 8C-1, Rule 401. The defendant says further that if the tape is somehow relevant it should have been excluded under N.C.G.S. § 8C-1, Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice. The defendant says the videotape is poignant and sensational. It should not have been admitted when it was not proof of any contested issue and its only effect was to prejudice the jury.

In addressing this issue, we first note that

> in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. . . . It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. . . .

*State v. Arnold*, 284 N.C. 41, 47-48, 199 S.E.2d 423, 427 (1973).

In this case, the State was relying on two aggravating circumstances, that the capital felony was committed for pecuniary gain and that the murder to which the defendant pled guilty was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons. The videotape showed the defendant remove the cash register from the convenience store. This was competent evidence that the murder was committed for pecuniary gain. The videotape showed the defendant shoot two people, including the deceased. This was evidence that the murder was part of a course of conduct which included a crime of violence against another person.

[6] The defendant next assigns error to the admission of testimony by an officer as to a statement the defendant made to him. The

defendant concedes that he assigned this as error on his first appeal and this Court found no error in the admission of this testimony. *State v. Jones*, 327 N.C. 439, 449, 396 S.E.2d 309, 314. He asks us to reconsider our decision in light of two federal cases, one of them from the United States Supreme Court, which have been decided after our first opinion in this case. *Arizona v. Fulminante*, 499 U.S. 279, 113 L. Ed. 2d 302 (1991); *Williams v. Withrow*, 944 F.2d 284 (6th Cir. 1991), *aff'd in part and rev'd in part on other grounds*, --- U.S. ---, 123 L. Ed. 2d 407 (1993).

The defendant does not show how these two opinions affect our decision in the previous appeal. We decline to reconsider our decision in the previous opinion.

[7]    Under his next assignment of error, the defendant returns to the jury selection. The defendant assigns as error the trial court's decision to remove three prospective jurors for cause when those jurors expressed reservations about the death penalty. The defendant asserts neither the prosecution nor the trial court adequately informed the jurors of the law relative to capital punishment, nor did either sufficiently question the jurors to determine their ability to follow the law.

During *voir dire* questioning of prospective jurors, the court excused several jurors for cause based on their inability to follow the law. The defendant contends three of these jurors were improperly excused. The three prospective jurors were: Mr. Sabhilchi, Mrs. Stokes, and Mrs. Krishen. Mr. Sabhilchi was originally from India and was raised in the Hindu religion. In the course of questioning, he expressed a belief that life imprisonment was a harsher penalty than the death penalty. Throughout extended questioning about the impact of his beliefs and life experience on his decision-making in this case, Mr. Sabhilchi promised to do his best, but continually expressed reservations about his ability to apply the law as given. The questioning culminated in the following exchanges:

[MR. WILLOUGHBY:] If we ask you the question that we've asked other people, do you feel that your life experiences or your personal or your makeup is going to prevent you or substantially impair you from following the law and the procedure as set out—and only you can answer that—but do you think that those feelings are so strong that they are going to impair or prevent you from following the law?

STATE v. JONES

[336 N.C. 229 (1994)]

[MR. SABHILCHI:] In all honesty, I say yes.

. . . .

THE COURT: Do you feel that your feelings or personal convictions about the death penalty would prevent or substantially impair the performance of your duty in accordance with the instructions that I would give you on the law and your oath as a juror?

[MR. SABHILCHI:] Yes, sir, Your Honor, because of my religious belief growing up that suggests I might not come to the right conclusion at the end.

After this exchange, the court excused Mr. Sabhilchi for cause.

Mrs. Stokes was also questioned at length regarding her view of the death penalty and her ability to weigh the decision according to the law and instructions. After the State's motion that she be excused, the defendant requested the opportunity to question her prior to a ruling on the motion. This request was granted and Mrs. Stokes was extensively questioned and guided through the decision-making process by the defendant. Finally, the court asked:

THE COURT: Let me ask you again, Mrs. Stokes, the question which I asked you yesterday and just a few minutes ago.

You understand and have heard the law that I read to you yesterday about the procedure that is followed, questions by the attorneys as to how this case will be conducted, what a jury must do in deciding this case.

You indicated that you do have some feelings about the death penalty one way or the other, whatever your feelings maybe [sic]. The question that we must know, the court must know, attorneys must know is whether or not your personal feelings that you have, your personal convictions about the death penalty, regardless of what it is, would prevent you or would substantially impair your performance of your duty in accordance with the instructions given to you by the court in this case and the oath that you're given as a juror.

[MRS. STOKES:] I'm not sure. I mean, part of me says my feeling will get in the way and part of me says I can follow the guideline that he said.

**STATE v. JONES**

[336 N.C. 229 (1994)]

Following this answer, the court allowed the State to resume its examination of this juror. At the close of the State's questioning, the court again asked:

> Would your personal feelings or convictions about the death penalty prevent or substantially impair the performance of your duties in accordance with the instructions given to you by the court in this case and the oath that you received as a juror?

This time, Mrs. Stokes responded, "[y]es." The defendant was given the opportunity to rehabilitate the juror and elected to ask no further questions. The court then excused Mrs. Stokes for cause.

Mrs. Krishen, the last of the three jurors who the defendant contends was improperly excused, was also questioned extensively by the State. She was originally from Vietnam and professed to follow Buddhism. After expressing doubts about the prospect of having to decide on the death penalty, the following exchange occurred:

> [MR. WILLOUGHBY:] Do you think that those feelings that you have might prevent you or substantially impair you from following the law and returning a verdict according to the law?

> [MRS. KRISHEN:] Yes.

> MR. WILLOUGHBY: Thank you. Your Honor, I would tender Ms. Krishen for cause.

> MR. MANNING: Object.

> THE COURT: Do you have some personal feelings or personal convictions about the death penalty that you feel would prevent or substantially impair your performance as a juror and your duty as a juror in accordance with the instructions that you receive from the court about the law and your oath which you take as a juror?

> [MRS. KRISHEN:] Yes, sir.

> THE COURT: Do you have any questions of the juror before I rule on the motion?

> MR. MANNING: No, Your Honor.

The court then excused the juror for cause.

STATE v. JONES

[336 N.C. 229 (1994)]

The defendant cites specific question and answer sequences from each juror's examination. When viewed out of context of the whole examination, these answers appear to indicate the juror could follow the law. This is not the correct manner of evaluation.

The question posed by the court to each of the jurors was taken directly from *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 852 (1985). The answers received were consistent with the prior answers given by the prospective jurors and did not indicate any ambiguity or ambivalence on the part of the jurors. There is no indication the defendant was given an opportunity to rehabilitate Mr. Sabhilchi, but there is also no indication that any manner of further questioning would have reached a different result. *See State v. Reese*, 319 N.C. 110, 120-121, 353 S.E.2d 352, 358 (1987). In regards to Mrs. Stokes and Mrs. Krishen, the defendant was afforded the opportunity to question them and did so in the case of Mrs. Stokes. In all three instances, the answers given by the prospective jurors clearly indicated their inability to carry out their duties as jurors and it was not error to excuse them. This assignment of error is overruled.

[8] The defendant next assigns error to the court's failure to submit the statutory mitigating circumstance that he had no significant history of prior criminal activity. The defendant did not request that this circumstance be submitted to the jury but we held in *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316 (1988), *death penalty vacated*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988), that it must be submitted if his record as a whole would reasonably support a finding by the jury that the defendant had no significant history of prior criminal activity.

The defendant introduced evidence that he was using illegal drugs for several weeks before the murder. He had broken into the Fast Fare on Person Street "six or seven times" and stolen various articles. He had broken into a pawn shop and stolen several guns. He sold some of the guns and used one of them to kill the victim in this case. Members of the defendant's family testified that he had shoplifted and "hustled" as a child. The court could conclude based on this evidence that the jury could not have reasonably found the defendant had no significant history of prior criminal activity. *See State v. Stokes*, 308 N.C. 634, 304 S.E.2d 184 (1983). This assignment of error is overruled.

**[9]** The defendant in his next assignment of error asserts the trial court committed reversible error in instructing the jury that it could refuse to consider mitigating evidence if it deemed the evidence to have no mitigating value. The defendant contends the jury apparently determined there was no mitigating value in a number of the twenty-five submitted nonstatutory mitigating circumstances upon which they were instructed. Further, the defendant asserts that a number of these circumstances were supported by uncontroverted evidence. Finally, the defendant contends the instruction requires the jury to conclude unanimously the evidence had mitigating value.

The challenged instruction, given after each of the nonstatutory mitigating circumstances, stated:

> If one or more of you finds by a preponderance of the evidence that this circumstance exists and one or more of you finds it has mitigating value, you would so indicate by having your foreman write "yes" in the space provided after this mitigating circumstance on the Issue and Recommendation form. If none of you finds this circumstance to exist and none of you find it to have mitigating value, you would so indicate by having your foreman write "no" in that space.

The court must submit to the jury the nonstatutory mitigating circumstances which the defendant requests if they are "supported by the evidence, and . . . are such that the jury could *reasonably* deem them to have mitigating value[.]" *State v. Pinch*, 306 N.C. at 26, 292 S.E.2d at 223 (1982) (quoting *State v. Johnson*, 298 N.C. 47, 72-74, 257 S.E.2d 597, 616-17 (1979) ). *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). The instruction as given fulfills the requirement. It is not for the court to determine whether there is or is not mitigating value in the evidence, that remains the province of the jury.

Our reading of this instruction does not indicate a requirement of unanimity by the jury on any of the nonstatutory circumstances. In the past, the instruction above has often included the word "unanimously" and we have consistently held this to be error. *See, e.g., State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). However, the corrected instruction without the word "unanimously" has consistently been found not to be error. *See State v. McKoy*, 327 N.C. 31,

394 S.E.2d 426 (1990); *State v. Hill,* 331 N.C. 387, 417 S.E.2d 765 (1992), *cert. denied,* --- U.S. ---, 122 L. Ed. 2d 684 (1993).

[10] The defendant raises the issue of whether there is double jeopardy inasmuch as some of the mitigating circumstances not found in this sentencing hearing were found in the original hearing. This hearing constitutes a *de novo* hearing granted at the defendant's request and therefore, the hearing begins with a clean slate. The defendant cannot then claim he is being subjected to a second jury trial.

We do not believe that *Eddings v. Oklahoma,* 455 U.S. 104, 71 L. Ed. 2d 1 (1982), requires, as argued by the defendant, a different result. In *Eddings,* the defendant was granted a new sentencing hearing because the trial judge who determined the punishment said he would not consider certain mitigating evidence. In this case, the jury was allowed to consider the mitigating evidence and determine if it had value. This distinguishes this case from *Eddings.* This assignment of error is overruled.

[11] The defendant next assigns as error the trial court's failure to instruct the jury as to parole eligibility in light of the fact the issue had been raised during the jury selection and again during the prosecution's closing arguments.

As the defendant acknowledges, we have held that parole eligibility is not a proper issue for consideration by a jury in a capital case. *State v. Syriani,* 333 N.C. 350, 428 S.E.2d 118, *cert. denied,* --- U.S. ---, 126 L. Ed. 2d 341 (1993); *State v. Roper,* 328 N.C. 337, 402 S.E.2d 600, *cert. denied,* --- U.S. ---, 116 L. Ed. 2d 232 (1991). The defendant offers no new arguments to change this position. We find no merit in this assignment of error.

[12] The defendant next assigns error to the court's refusal to submit to the jury, as requested by the defendant, the nonstatutory mitigating circumstance that "[t]he defendant has been confined for a considerable amount of time prior to his sentencing." A mitigating circumstance involves some aspect of the defendant's character or record or some extenuating aspect of the crime charged which, while it does not prevent the defendant from being found guilty, it does make him less deserving of the death penalty. *State v. Williams,* 305 N.C. 656, 686, 292 S.E.2d 243, 261, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). The fact that the defendant had spent a considerable amount of time in jail does not relate

to his character, record, or any aspect of the crime. It should not have been submitted as a mitigating circumstance.

[13]   The defendant's next assignment of error challenges the instruction given by the court regarding the consideration of mitigating circumstances. The defendant asserts that the instructions permit only those jurors who found mitigating value in a specific circumstance to consider that specific circumstance when weighing the aggravating and mitigating circumstances.

The challenged instruction states:

> In deciding this issue, you are not to consider the aggravating circumstances standing alone. You must consider them in connection with any mitigating circumstances found by one or more of you. When making this comparison, each juror may consider any mitigating circumstance or circumstances that juror determines to exist by a preponderance of the evidence. After considering the totality of the aggravating and mitigating circumstances, each of you must be convinced beyond a reasonable doubt that the imposition of the death penalty is justified and appropriate in this case before you can answer the issue "yes."

After additional instructions, the charge continued:

> You, the jury, must determine how compelling and persuasive the totality of the aggravating circumstances are when compared with the totality of the mitigating circumstances. After so doing if you are satisfied beyond a reasonable doubt that the aggravating circumstances found by you are sufficiently substantial to call for the death penalty when considered with mitigating circumstances found by one or more of you, it would be your duty to answer this issue "yes." If you are not so satisfied or have a reasonable doubt, it would be your duty to answer that issue "no."

Reference to "circumstances found by one or more of you" indicates to all jurors that they should consider each of the circumstances found to exist. The instruction also directs the jurors to consider "the totality of the mitigating circumstances" and requires the jury to be "satisfied beyond a reasonable doubt" that the aggravating circumstances found, "when considered with mitigating circumstances found by one or more of you," are sufficiently substantial to call for the death penalty. These phrases all serve to signal reasonable

jurors that they must consider and reconsider all of the evidence in mitigation and all of the circumstances found to have mitigating value before making their final decision. We find the language of this instruction permits and even encourages jurors to take into consideration all mitigating circumstances found to exist under Issue Two. This assignment of error is overruled.

The defendant contends the trial court committed reversible error both in overruling the defendant's objections to numerous improper arguments made by the prosecution and in failing to intervene to correct grossly improper arguments *ex mero motu*.

A.

[14] The defendant first cites to the following portion of the prosecution's argument:

> William Quentin Jones knew on March 7 that if he waited for Ed Peebles to go home to his family, if he waited then he wouldn't get all the money in the cash register and that's what he wanted. An innocent customer, innocent people like you and like me were not going to deter him.

The defendant also points to a subsequent passage in which the prosecutor said:

> Now, why does the fact that a murder and this murder of Ed Peebles was committed for pecuniary gain, why does that make this murder and this murderer worthy of the maximum penalty under law? First of all, it's arbitrary. It means it could have been anyone. It could have been L. E. Williams. Do you remember the older black gentleman who came in and said he stopped there every night? Remember he told you that. I stop there every night to get pork rinds and peanuts because I work a third shift. It didn't matter to William Quentin Jones that it was Ed Peebles. It may have mattered to Ed Peebles' family but didn't matter to the defendant. It could have been anybody. Could have been Richard Houser, could have been you, if you had been in that store.

These two passages, according to the defendant, are examples of the dominant theme of the prosecution which was that the jury needed to kill the defendant to protect themselves and their loved ones.

**STATE v. JONES**

[336 N.C. 229 (1994)]

Reading the entire text of the argument casts a different light on both passages. The first passage is preceded and followed by a verbal recreation of the defendant's actions in sequence with the actions of others in and around the Fast Fare at the time of the incident. The description rebutted the defendant's main contention in mitigation which was that he was physically and mentally impaired due to substance abuse at the time of the robbery and shooting. The argument sought to illustrate the cold, calculated thought processes and actions displayed by the defendant. The argument placed the defendant at the telephone outside the Fast Fare while a police officer was inside and moved him into the store shortly before closing time in anticipation of collecting the maximum sum of money possible. The second passage described why the aggravating circumstance of pecuniary gain was deserving of the death penalty. The cited section was preceded by a section recounting the defendant's own statement as to his motivation in robbing the store. The point of the cited passage being that pecuniary gain placed the value of money above consideration of human life and therefore justified the implementation of the death penalty. It is not improper for the prosecution to argue vigorously for the death penalty. *State v. Johnson*, 298 N.C. 355, 367, 259 S.E.2d 752, 760 (1979). Counsel is given wide latitude to argue the pertinent law and the facts and all reasonable inferences which may be drawn from the facts. *State v. Britt*, 291 N.C. 528, 231 S.E.2d 644 (1977). We find no error in the arguments and hold that assignment of error to the court's actions regarding this portion of the argument is overruled.

## B.

[15]	The defendant also argues that the prosecution went outside the evidence during its arguments and improperly commented on evidence not presented by the defendant. First, the defendant cited to the prosecutor's argument that the defendant did not present a psychiatrist or psychologist to testify in regards to the defendant's mental impairment. The defendant objected to this comment during the argument, but the objection was overruled. The State asserts the argument was proper inasmuch as the defendant had the burden of proving the mitigating circumstances. Since the defendant offered no expert testimony in support of those circumstances involving his mental health and condition, we agree that commenting on this void and drawing inferences from the absence was not error.

STATE v. JONES

[336 N.C. 229 (1994)]

**[16]**   The defendant further contends the prosecutor went beyond the scope of the evidence in commenting on a nonstatutory mitigating circumstance when she said:

> (22) While in prison, the defendant has maintained meaningful relationships which provide him with guidance and positive support.
>
> What do his letters show you? He offered these to you. He picked which letters he wanted you to read. You know he picked them. Would you like to have read the ones you didn't get?
>
> MR. MANNING: Objection.
>
> THE COURT: Overruled.
>
> MS. HILL: These are his letters, his evidence that he picked for you to read. . . .

The defendant stops quoting at that point but the State contends the rest of Ms. Hill's argument must be considered. That argument continues:

> Lonnie Gerard Smith testified he got some letters, too. What do these letters show? Remember, we're talking about meaningful relationships that provide him with guidance and positive support. What do his letters show you? Send me money, send me necklaces, rings, watches, stuff like that. P.S. I need some money. Send me $20. Bring me some money and a silver rope. I need some new tennis shoes because mine are six months old.
>
> Never once does he say send me a religious book, or just seeing you would be enough. And what does he need money for? He's provided food and clothing and shelter. Granted, the clothing, he writes, the color is bad. He tells you, he says, "I need the money to keep myself looking good."
>
> The same old William Quentin Jones there has always been, but maybe the meaningful relationships he's talking about is where he writes to Sonja and he says: "Damn, you look good. You have, how can I say, blossomed. Send me some biker shorts pictures."
>
> Are you satisfied that this has mitigating value? Satisfied! Are you satisfied? Are you satisfied that it has mitigating value that the defendant can continue to have relationships

which provide him, he says, with guidance and positive support when he has destroyed forever those very same things for another family? You can find it, you have the power, but you know the truth.

The prosecutor's statement suggesting the existence of further letters not made available to the jury is borne out by the questioning by the defendant of Lonnie Gerard Smith. At the conclusion of the direct examination of Lonnie Smith, the following exchange occurred:

Q. So when you were in prison for this other break-in, you and he [the defendant] exchanged letters?

A. (Witness nods head affirmatively).

Q. And in the letters that he wrote you, did he express his remorse or sorrow for having done this?

A. Yeah.

Q. Did you happen to save any of those letters while you were in prison?

A. I have plenty of them.

Q. Do you still have them?

A. Yeah.

Q. Are they at home?

A. Yeah.

Q. I might ask you to go get those later on today. I didn't know about those.

There is no further reference to these letters in the transcript.

Reading the whole argument made by the prosecutor and in light of the evidence elicited by the defendant as to the existence and availability of letters not introduced by the defendant, we find no error in this argument. The testimony of Lonnie Smith indicates the contents of these letters could have been beneficial to the defendant's case. It is therefore a logical inference from the evidence of their existence and the apparent beneficial content that the defendant's decision not to introduce them could be due to contents which were detrimental to the defendant.

STATE v. JONES

[336 N.C. 229 (1994)]

[17] The defendant lastly claims the prosecution's argument belittled the nonstatutory mitigating circumstance that the defendant pled guilty without any prior promises or concessions thus insuring the prompt and certain application of correctional measures to him. The challenged argument stated:

> Do you think we couldn't have proved it? Do you think if he had pled "not guilty" that Mr. Willoughby and I on behalf of the State could not have proved to a jury that he committed it? If they heard exactly the same evidence you heard, do you think a jury would have found him not guilty? If you want to, you can say because you are the voice of the community. If you want to, you can say if you go into a convenience store and you commit robbery and you commit murder but you come to court and plead guilty you will not receive the maximum penalty under the law because you pled guilty. You can say that. You have the power. But it wouldn't be right and it wouldn't be justice and you know that.

Ultimately, the jury did not find this mitigating circumstance. We agree with the State that in the face of overwhelming evidence, the plea of guilty would seem to have little mitigating value and the argument serves only to point out the evidence in an effort to focus the jury on the logical inference. We find no error in this argument.

C.

[18] The defendant cites to a short passage taken from one of the prosecutor's arguments in which the prosecutor made reference to the jury as being "the voice of the community." The defendant cites several cases in contending that this argument is grossly improper and merits a new sentencing hearing. See State v. Scott, 314 N.C. 309, 333 S.E.2d 296 (1985); Prado v. State, 626 S.W.2d 775, 776 (Tex. Cr. App. 1982); See, e.g., Hutchins v. Commonwealth, 220 Va. 17, 255 S.E.2d 459 (Va. 1979); State v. Agner, 30 Ohio App.2d 96, 283 N.E.2d 443 (1972).

We believe the defendant misreads Scott. In Scott, we cited cases from Texas and Louisiana in holding that the jury acts "as the voice and conscience of the community" and that the members of the jury are seated as "representatives of the community." Scott, 314 N.C. at 311, 333 S.E.2d at 297-98. We find no error in the use of the description of the jury as "the voice of the community."

STATE v. JONES

[336 N.C. 229 (1994)]

## D.

[19]  The defendant suggests the argument by the prosecution lessened the responsibility of the jury in the decision-making process. The defendant cites to the following passage:

> When you go in to deliberate in a few minutes, you may go in with the idea that you've got to do something that you feel good about and it may be suggested to you that you ought to do what feels right, what feels good. But I suggest to you not to accept that guilt. Don't take someone else's guilt. Don't accept someone else's guilt for what they've done. Don't let anybody make you feel guilty for living up to your responsibility. You can't always have a good feeling about what you do. You don't get a warm glow inside from doing all your daily tasks. There are parts of your job and your family that are hard, that are difficult, some thing [sic] that wring you out emotionally, and this is one of those things.

> You're not going to go home with a warm glow and feel good about this case. Whatever your decision is, this case is going to change you. You've seen a different side of life. It makes you think about things differently. And you can't go home and feel good and put your feet up tonight, but you can go home and feel like you've done the right thing. You can go home and know you've followed the law and that you've done what your responsibility was, that you didn't shirk that responsibility. It's your decision today after looking at the facts and the circumstances. It's your decision to weigh the evidence.

Our reading of this portion of the argument indicates the prosecutor does not alter the burden on the jury, but instead emphasizes the responsibility and duty of each juror and of the jury as a whole. We find nothing in this argument which constitutes error.

## E.

[20]  The defendant's final contention regarding the prosecution's arguments centers on the jury's consideration of mercy or sympathy in reaching its decision. The defendant contends the prosecutor sought to discourage the jury from considering compassion for the difficulties the defendant had faced throughout his life. Such an argument violates the principles expressed in *Woodson v. North Carolina*, 428 U.S. 280, 49 L. Ed. 2d 944 (1976), and

**STATE v. JONES**

[336 N.C. 229 (1994)]

prevents the jury from fairly considering the evidence offered in mitigation.

The section of the argument to which the defendant objects states:

> The State is satisfied now that inside of each of you is a personal conviction that by this evidence and according to the law William Quentin Jones should be sentenced to death for the murder of Ed Peebles. You are to perform your duty as a juror in reaching this decision fairly and objectively and without bias or prejudice, passion or any other arbitrary factor. Mercy, pity, sympathy, these are emotions. You promised us you would make your decision on the facts according to the law and we believed you.

> Mr. Dodd said to some of you during jury selection you had wide latitude in allowing your feelings to play a part when you consider this case. I tell you that is wrong. It would be wrong for you to sentence the defendant to death if the State has not met its burden because you felt angry or because you felt sorry for the victim's family. And it would be wrong for you to sentence the defendant to life when the State has met its burden because you felt sorry for him or his family, or because you wanted to be merciful or sympathetic. It would be wrong for you to allow your emotions to overcome your reason and common sense. You must base your decision, as you told us you would, upon the facts, weighed in light of your common sense and according to the law to reach a recommendation about sentence in this case that speaks the truth.

> You may have those feelings but if you weep for the defendant, then weep for Ed Peebles. And if you weep for the defendant's mother, then weep for a little girl who will never know what it is to be held in her daddy's arms again. And if you weep for the defendant's brother, weep for Michelle Peebles, who when she sat in this courtroom and watched that same videotape, saw the last moments of her husband's life. And if you weep for the defendant's family, then weep for the parents of Ed Peebles who know what it is like to lay their son in the ground because he stopped for a cup of coffee at a convenience store.

STATE v. JONES

[336 N.C. 229 (1994)]

> But when you have wept, when you are done weeping,
> then, ladies and gentlemen, base your decision not on sym-
> pathy, not on anger, not on mercy, not on vengeance, not
> on pity, not on retribution. Base your decision as you promised
> us you would on the facts. Thank you.

The defendant then points this Court to the concluding argument
of the State which stated:

> And while they [defense counsel] are here, I want you
> to think about a few things. Think about what they are asking
> you to do. Are they asking you to make a decision fairly and
> objectively? Are you being asked to render justice? Give a
> person what is due? Are you being asked to make your decision
> without passion and bias and sympathy or pity? And are you
> being asked to follow the law and do what the law requires
> you to do. Now, you have the power to do whatever you choose.
> They are absolutely right. They may tell you that and you
> do, you have the power. You have the power to let William
> Quentin Jones escape justice for what he did. You've got the
> power to say that despite the weight of the evidence, William
> Quentin Jones should receive a life sentence. You have that
> power just like William Quentin Jones had the power to take
> Ed Peebles' life. You have the power. But what I ask you
> is to resist doing something just because you have the power.
> That's what William Quentin Jones did. Don't do it just because
> you have the power. Don't do it like William Quentin Jones.
> Thank you.

The defendant notes that many of the nonstatutory mitigating cir-
cumstances requested by the defendant asked the jury to consider
the mitigating value of his background and character. In weighing
those aspects of the defendant, the jurors are necessarily being
asked to use their compassion and mercy. The defendant cites
to *California v. Brown*, 479 U.S. 538, 548, 93 L. Ed. 2d 934, 944
(1987) (Brennan, J., dissenting), as the authority for this argument.

The majority in *Brown* held that singling out the word "sym-
pathy" without considering the whole of the surrounding statement
was not appropriate. *Brown*, 479 U.S. at 542-43, 93 L. Ed. 2d at
940-41. In *Brown*, the issue was an instruction which, like the argu-
ment cited above, listed numerous irrelevant factors which should
not enter into the deliberation process. Extraneous, non-evidence
based sympathy is one such factor. Hearing the argument of the

prosecution coupled with the court's instruction we do not believe a reasonable juror could understand the argument to call for the jury to disregard mitigating evidence simply because .it appeals to a person's sympathies. The argument attempts to and serves to reinforce the responsibility of the jury to reach its decision based on the evidence and the law. We find no error.

[21] The defendant contends in his next assignment of error that the jury was erroneously charged as to how to consider nonstatutory mitigating circumstances. The court charged the jury that if it found one or more mitigating circumstances it must consider the aggravating circumstances in connection with any mitigating circumstances found by one or more of them. The court then charged, "[w]hen making this comparison, each juror may consider any mitigating circumstance or circumstances that juror determines to exist by a preponderance of the evidence."

The defendant says this charge, by the use of the word "may," told the jury that they need not consider mitigating circumstances and this was error. We do not read the instruction as does the defendant. The jury was instructed unequivocally that they must consider the aggravating circumstances in connection with the mitigating circumstances. The next sentence in which the word "may" is used, tells the jury which mitigating circumstances they may consider, which are those found by a preponderance of the evidence. We find no error in this instruction. *See State v. Lee*, 335 N.C. 244, 439 S.E.2d 547 (1994).

[22] The defendant next assigns error to the part of the charge that defined a mitigating circumstance. The defendant requested the following instruction:

Members of the jury, I instruct you that mitigating factors are not limited to factors that mitigate the killing itself. That is, it is not necessary in order to find a factor to be mitigating that it extenuate the gravity of the offense. Rather, in addition to factors extenuating the gravity of the offense, you may also consider any aspect of the defendant's background or character as a mitigating factor if you deem it a reason supporting a sentence less than death.

The court declined the defendant's request and gave the following charge:

STATE v. JONES

[336 N.C. 229 (1994)]

A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder but which may be considered as extenuating or reducing the moral culpability of the killing or make it less deserving of extreme punishment than other first degree murders.

The defendant says the charge given by the court failed to give him the full benefit of relevant mitigating evidence. He says that to have mitigating value evidence need not lessen the seriousness of the crime but may reduce the moral culpability of the defendant. If this is so, the charge was certainly not in error for the court charged specifically on this point. The defendant also says the evidence need not make a killing less deserving of extreme punishment than other first degree murders, but need only suggest some particular basis for a particular defendant to receive a sentence less than death. We can see very little difference between these two statements. It was not error for the court to charge as it did on this point. Finally, the defendant argues that mitigation need not extenuate or reduce the moral culpability of the crime but need only "lessen[ ] the seriousness of the murder[.]" *State v. McDougall*, 308 N.C. 1, 25, 301 S.E.2d 308, 323, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983). This is not a correct statement of the law. A defendant may be less culpable than some other murderer but this does not make a murder any less serious. We find no error in this challenged part of the charge.

PRESERVATION ISSUES

The defendant brings forward five issues which have recently and/or consistently been decided contrary to his position and requests we re-examine our position.

[23] The first preservation issue involves the use of peremptory challenges by the State to remove prospective jurors who expressed reservations about the death penalty. This issue was decided contrary to the defendant's contention in *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855 (1988), *vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *judgment reinstated*, 331 N.C. 746, 417 S.E.2d 227 (1992), *cert. denied*, --- U.S. ---, 122 L. Ed. 2d 775 (1993); *State v. Bacon*, 326 N.C. 404, 390 S.E.2d 327 (1990). We find no error.

STATE v. JONES

[336 N.C. 229 (1994)]

[24]   The defendant asserts the trial court improperly instructed the jury that if they answered Issue Four "yes," it would be their duty to recommend the death sentence. This issue was heard and decided contrary to the defendant's position in *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308. *See also State v. Maynard*, 311 N.C. 1, 316 S.E.2d 197, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984). We find no error.

[25]   The defendant contends the trial court committed prejudicial error by failing to grant his motion for individual *voir dire* and sequestration of the jury. "Motions for individual voir dire and jury sequestration are directed to the discretion of the trial judge." *State v. Reese*, 319 N.C. 110, 119, 353 S.E.2d 352, 357. In light of the defendant's failure to cite any specific incident in the transcript which would indicate an abuse of discretion, we overrule this assignment of error.

[26]   The defendant contends the North Carolina death penalty statute is unconstitutional, is imposed in a discriminatory manner, is vague and overbroad, and unconstitutionally involves subjective discretion. We have consistently upheld the constitutionality of the death penalty statute. *See State v. Roper*, 328 N.C. 337, 370, 402 S.E.2d 600, 619. We overrule this assignment of error.

[27]   The defendant asserts the trial court committed reversible error in instructing the jury on the issue of sympathy and mercy. The defendant objects to the portion of the instruction which stated: "You are to perform this duty fairly and objectively and without bias, prejudice, passion, or any other arbitrary factor." The defendant did not object to this instruction at trial and the issue is therefore subject to "plain error" review. *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991). In order to require the State to demonstrate harmless error beyond a reasonable doubt, the defendant must show any error achieves constitutional status. *State v. Robinson*, 330 N.C. 1, 31, 409 S.E.2d 288, 305 (1991). The cited section of the instructions does not direct the jury not to consider sympathy or mercy, but rather reminds the jurors that irrelevant, outside, arbitrary factors should not enter into their deliberations. The jury was properly instructed on the definition of mitigating circumstances and on the application of those circumstances to the decision-making process. We find no error in the instruction as given.

PROPORTIONALITY REVIEW

[28]    In reviewing the sentence, as we are required to do by N.C.G.S. § 15A-2000(d), *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983); *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987), we hold that the aggravating circumstances were supported by the record and that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Our final task is to determine whether the sentence was excessive or disproportionate to the penalty imposed in other first degree murder cases. We hold that the sentence was not excessive or disproportionate.

In determining proportionality, we are impressed with the cold blooded and deliberate way in which the murder was committed. The defendant entered the premises and opened fire without warning, killing one patron and wounding another. Apparently, he intended to so intimidate the people in the store that they would not interfere with his plan to rob the store.

The jury found as aggravating circumstances that the murder was committed for pecuniary gain and the murder was part of a course of conduct which included the commission of other crimes of violence against other persons.

The defendant cites several robbery murder cases in which the juries have recommended a sentence of life in prison. *State v. Massey*, 316 N.C. 558, 342 S.E.2d 811 (1986); *State v. Miller*, 315 N.C. 773, 340 S.E.2d 290 (1986); *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985); *State v. Bauguss*, 310 N.C. 259, 311 S.E.2d 248, *cert. denied*, 469 U.S. 838, 83 L. Ed. 2d 76 (1984); *State v. Whisenant*, 308 N.C. 791, 303 S.E.2d 784 (1983); *State v. Fox*, 305 N.C. 280, 287 S.E.2d 887 (1982); *State v. Hunt*, 305 N.C. 238, 287 S.E.2d 818 (1982); *State v. Easterling*, 300 N.C. 594, 268 S.E.2d 800 (1980); *State v. Avery*, 299 N.C. 126, 261 S.E.2d 803 (1980); *State v. Atkinson*, 298 N.C. 673, 259 S.E.2d 858 (1979). He contends that the murder committed in this case is no more egregious than any of the murders committed in those cases. We believe all those cases are distinguishable. In *Massey, Wilson, Bauguss, Easterling, Avery*, and *Atkinson* the defendants were convicted of felony murder. This means the juries did not have

STATE v. JONES

[336 N.C. 229 (1994)]

to find the defendants intentionally killed the victims. In this case, the defendant pled guilty to a charge of first degree murder which would include an intentional killing with premeditation and deliberation.

In *Miller*, the defendant was convicted of first degree murder when a person with whom he was acting in concert killed a man. In this case, the defendant did the killing. *Fox* and *Hunt* involved two brutal murders, but in neither case was the aggravating circumstance found, as it was in this case, that the defendant was engaged in a course of conduct which included the commission of crimes of violence against other persons. In *Whisenant*, the defendant was convicted of two murders which occurred after he had entered the home of an elderly man. The facts, as revealed in the opinion in that case, do not approach the deliberate and cold blooded murder that occurred in this case.

The defendant also relies on *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987) and *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), two cases in which the juries recommended death sentences which we found disproportionate. In *Stokes*, the defendant was convicted of felony murder which distinguishes it from this case. In *Young*, the aggravating circumstance was not found that the defendant's course of conduct included the crimes of violence against other persons. This Court in *Young* used the absence of this aggravating circumstance to distinguish that case from cases in which the death penalty was imposed. *Id.* at 691, 325 S.E.2d at 194.

There are cases similar to this case in which the death penalty has been imposed. In *State v. Lawson*, 310 N.C. 632, 314 S.E.2d 493 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985), the defendant shot two people, killing one of them, when they surprised him after he had broken into a home. One of the aggravating circumstances found by the jury was that the murder was part of a course of conduct which involved a crime of violence against another person. We said in that case that of the fourteen cases then in the pool in which the death penalty had been affirmed, this aggravating circumstance had been found in seven of them. *Id.* at 648, 314 S.E.2d at 503. In *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243 (1982), *cert. denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), we affirmed the imposition of a death sentence when a person was killed in a robbery and the jury found the course

of conduct aggravating circumstance. In *State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985) and *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983), death sentences were affirmed for killings during robberies.

We are confident that death penalties are being consistently imposed in this state for murders such as the one involved in this case. The defendant's sentence was not disproportionate.

NO ERROR.

Chief Justice EXUM concurring.

I concur with the result reached by the majority in this case, but I disagree with the majority's handling of defendant's first assignment of error.

When the second juror was excused for cause after stating that he would have difficulty following the court's instructions concerning the meaning of a life sentence, defense counsel conducted a voir dire of another juror. Following this voir dire, the defense had to decide which of six prospective jurors then remaining in the courtroom and earlier passed by the State it would accept. There was a discussion off the record between defense counsel and defendant. The following colloquy then occurred:

MR. MANNING: Your Honor, may we approach the bench?

THE COURT: All right.

MR. DODD: Judge, in view of the issues that were raised on parole that was raised in front to all the other jurors, we would request that you ask the remainder of the jurors if they have any problem following your instruction on parole, number one.

Number two, we would ask for the right to inquire of the remaining jurors whether they have—that's if you're not going to ask it. Only because it was raised and because everybody else who is sitting in here has heard it and we believe it may play a role consciously or subconsciously and we have to deal with it.

THE COURT: Well, I'm not going to ask them any questions. It's your voir dire and can ask the appropriate questions.

**STATE v. JONES**

[336 N.C. 229 (1994)]

MR. WILLOUGHBY: I think their views on parole are an inappropriate subject to be questioned under the law.

THE COURT: You can't. He's the one that raised it. That's the only reason I gave them a charge, which is out of a Supreme Court case.

MR. DODD: I understand.

THE COURT: You can't ask them that.

MR. DODD: I need to understand if they can follow the instruction you just gave. Surely I have the right to ask that in view of the fact you just gave it and they all heard it.

THE COURT: I don't think you can.

MR. DODD: Okay.

THE COURT: No under our case law.

MR. DODD: Let me make sure I understand. You're saying that I can't ask anymore questions relating to parole or their ability to follow your instruction on parole.

THE COURT: Anything that deals with parole you cannot.

MS. HILL: But you're not saying he cannot ask the jurors will you be able to follow the law as the judge gives it to you. That's a standard question you can ask.

THE COURT: Yes.

MS. HILL: But not parole.

THE COURT: I'll give them that when I charge them.

MS. HILL: Any instructions on the law the judge gives you in general.

THE COURT: Well, that's the basic thing in picking a jury anyway is to follow the law. We spend a week picking a jury. Usually it takes five minutes to find out.

MS. HILL: You're not telling Mr. Dodd he can't ask that question but can't pick out one instruction and ask about it.

MR. DODD: Okay.

THE COURT: Anything else?

STATE v. JONES

[336 N.C. 229 (1994)]

MR. MANNING: I think we're at the point where we need to make our decision and I was wondering if we could take about ten minutes to have our client back in the hallway to confer with him about it.

THE COURT: Well, I'll give you some time. I have 40 jurors upstairs ready to come down here. I have to talk to them a little bit. I will wait until after you make your challenges.

MR. DODD: Before we make that decision, I want to ask one general question of the whole panel. That is, can they follow the law they've been instructed on so far on everything they've heard.

THE COURT: That's an improper question you're going to get back into. That's improper for you to ask them. He already brought it up.

MR. DODD: You understand what my concern is.

THE COURT: I understand.

MR. DODD: I don't know any other way to do it except to ask them if they will follow all the instructions.

MS. HILL: Will you follow the judge's instructions and not single it out.

THE COURT: Ask if they know of any reason they have of their own why they could not.

MR. DODD: I'll do that.

MS. HILL: Before we call the next panel, do you know—can we be heard about the procedure of the second panel?

MR. DODD: Sure.

THE COURT: Okay.

(RECESS)

MR. DODD: Your Honor, thank you for your time. With the defendant's thanks, we would excuse Juror No. 1, Ms. Pope; Juror No. 6, Ms. Wetherington; and Juror No. 12, Mr. Albright.

THE COURT: The three of you may step down and come over to the clerk's desk and she'll tell you where to go from here.

The defendant is satisfied with jurors No. 2, 4 and 11?

MR. DODD: Yes, Your Honor, we are.

THE COURT: You may seat the new jurors, nine new jurors.

As I read the foregoing colloquy, the trial court declined to permit defense counsel to question the six jurors remaining in the courtroom regarding whether they could follow the court's instructions concerning the meaning of a life sentence apparently on the ground that none of these jurors had expressed concern on this point. The trial court did, however, after much discussion, rule that it would permit defense counsel to ask these jurors whether they knew of any reason they could not follow the trial court's instructions on the law. Apparently believing, as the majority surmises, that further questioning on the point would not produce revelations helpful to him, defendant declined to make this inquiry, electing instead to excuse peremptorily three of the six jurors and to accept three.

Having not pursued this line of inquiry even to the extent permitted by the court, I think defendant has waived any right to complain about the trial court's refusal to permit him to ask the more specific question relating to the trial court's earlier instruction on the meaning of a life sentence.

Neither do I believe the trial court's handling of this issue amounted to error. Defendant did not seek to inquire of the remaining prospective jurors concerning their ability to follow the trial court's instructions on the meaning of a life sentence immediately upon the excusal of the second juror for cause. Had he done so, the issue having been raised before these jurors and being fresh in their minds, I would agree with the majority that refusal on the part of the trial court to permit the inquiry would have been error. Defendant though, proceeded to question another prospective juror at some length concerning her general views and attitudes toward the death penalty. It was not until after this questioning occurred that defendant asked to reopen the parole eligibility issue with the remaining prospective jurors who had not indicated a problem with it. The trial court ruled that it would not permit reopening of the parole eligibility issue at that time but that it would permit defendant to ask generally whether the remaining jurors could follow the court's instructions on the law. Under these circumstances I think it was within the trial court's discretion

to handle the matter as it did, and the trial court did not abuse its discretion.