THE STATE OF OHIO, APPELLEE, *v.* AGNER, JR., ET AL, APPELLANTS.

(No. 785—Decided May 24, 1972.)

*Mr. Richard J. Rinebolt,* prosecuting attorney, for appellee.

*Mr. Paul D. Beach,* for appellants.

GUERNSEY, J. (Presiding). Defendants Wayne Lewis Agner, Jr., and Dennis L. Agner, appellants herein, were

convicted in the Common Pleas Court of Hancock County of a violation of R. C. 3719.44 (E) in unlawfully dispensing an hallucinogen to a minor. We will consider their assignments of error and the evidence pertaining thereto separately and in the order set forth by the appellants.

I. "The Court erred by admitting, over objection, evidence of sale of an hallucinogen where defendants were jointly indicted for dispensing an hallucinogen to a minor."

R. C. 3719.44, prescribes in pertinent parts that no persons shall:

"(D) Sell, barter, exchange, or give away, or make offer therefor, any hallucinogen except in accordance with section 3719.40 to 3719.49, inclusive, of the Revised Code;

"(E) Unlawfully dispense or administer any hallucinogen to a minor."

Appellants contend, in effect, that the legislature intends to distinguish between the crimes set forth in these two subdivisions and that since the sale of an hallucinogen is a separately defined crime under subdivision (D) the term "dispense" in subdivision (E) excludes any sale. Appellants further claim that as the definition of "dispense" appearing in subdivision (R) of R. C. 3719.01 ("'Dispense' means sell, distribute, leave with, give away, dispose of, or deliver."), is confined by the preamble of that statute to its use "in sections 3719.01 to 3719.22, inclusive, of the Revised Code," such definition may not be applied to R. C. 3719.44 (E), and the word "dispense" as used therein must be defined without any reference to sale in the manner defined by Webster's Third New International Unabridged Dictionary:

"1a: to deal out in portions: DISTRIBUTE, GIVE, PROVIDE."

It would seem to this author that it was legislative oversight when the pre-existing definition section, R. C. 3719.01, was not specifically extended to apply to all of Chapter 3719 when that portion thereof dealing with hallucinogen's was adopted effective September 20, 1967. Indeed, in R. C. 3719.48 (B) the regulations governing "dis-

pensing and sale by pharmacists contained in section 3719.05 of the Revised Code, and the regulations governing prescribing, dispensing, or administering by licensed practitioners contained in section 3719.06 of the Revised Code apply to hallucinogens the same as to narcotic drugs.'' In this respect, at least, the definition of dispensing in R. C. 3719.01 must apply to the crime set forth in R. C. 3719.-44 (E).

However, since pharmacists and licensed practitioners are not involved in this appeal we will assume, without deciding, that the definition of dispensing in R. C. 3719.01 may not be applicable merely by virtue of the existence of such statutory definition to the crime set forth in R. C. 3719.44 (E). On this premise we examine the definition of ''sale'' appearing in Webster's Third New International Unabridged Dictionary and find that, among other things, it is defined:

''3b: distribution * * * by selling.''

Thus, to sell is to distribute, and to distribute is to dispense. The term ''dispense'' does not necessarily include the act of selling, but the term ''sale'' does include the act of dispensing. We conclude that evidence of a sale constitutes evidence of dispensing and that the trial court did not commit error in admitting evidence thereof.

II. ''The trial court erred by permitting the jury to speculate upon the guilt of the defendants, Wayne Lewis Agner, Jr. and Dennis L. Agner, when the record was totally devoid of evidentiary support for a conviction under 3719.44 (E), Revised Code, and by so doing, violated the due process clause of the 14th Amendment to the Federal Constitution.''

This assignment has reference to the identity of the accused, the appellants claiming that the testimony and the argument of the prosecutor as to guilt related to the conduct of sixteen different individuals rather than to the two defendants.

We have carefully read the entire record with emphasis on those parts thereof where sixteen different appellations were used by various of the witnesses and the

prosecutor, and find that in all cases the different appellations constituted references to the defendants, their father, or their brother, either by their proper names, a shortened name, a familiar name, a nickname, or a collective term, and at least one misnomer. However, we also find that in each case the identity of the person referred to was either specifically or reasonably apparent, and that all of the evidence, considered together, was sufficient to prove the guilt of each of the defendants beyond a reasonable doubt. This assignment of error is without merit.

III. "The trial court erred by failing to cause the statutory oath to be administered to the jurors and jury."

This assignment has reference to the oaths given to the jurors as a group and separately to the thirteenth juror after they were respectively selected. The complaint is to the use of the word "will" instead of the word "shall", to the use of the name Wayne Lewis Agner instead of the name Wayne Lewis Agner, Jr., and to the fact that each juror of the original twelve was not required to answer to the oath in such manner that his individual "I do" could be ascertained.

Examination of the record discloses that no objection was made to the form of the oath or to the manner of answering at the time the respective oaths were administered. We are thus controlled by the reasoning set forth in the case of *State* v. *Glaros,* 170 Ohio St. 471, 480, wherein Judge Taft stated:

"We have been referred to no decision of this court holding that a judgment of conviction can be reversed for a cause that would necessarily represent a 'cause' within the meaning of Section 2945.83 (E), Revised Code, where such cause was not complained of at a time when counsel had an opportunity to call it to the attention of the trial court in time to avoid or prevent it and where it does not affirmatively appear from the record that defendant was prejudiced thereby."

In that case the court held:

"2. Where the trial court fails to comply with the requirement of Section 2945.27, Revised Code, that oaths

or affirmations be administered to prospective jurors before their examination on *voir dire,* such failure will not entitle defendant to a new trial if defendant and his counsel could have called such failure to the trial court's attention in time to avoid it but neither defendant nor his counsel did so."

Not having made timely objection appellants have waived error, if any, and their third assignment of error is without merit.

IV. "The trial court erred in admitting, over objection, irrelevant and incompetent evidence."

A. Appellants claim that the identification, over objection, of Wayne Lewis Agner (Sr.) was not relevant. With this we cannot agree. It had relevancy to show the existence of two persons of the same name and to distinguish between the one charged and the one not charged. In any event no prejudice from such testimony appears in the record.

B. Appellants' next claim as to an informant being permitted, over objection, to testify as to a conversation had with a deputy sheriff out of the presence of either defendant has no merit whatsoever. The testimony related only to the fact of the  conversation and not as to its content.

C. The technical complaint of appellants to the non-responsiveness of an answer by the informant could not be reached by mere objection to such answer but equally technically should have been met by a motion to strike, which was not made by the appellants. Nor does prejudice appear in the answer.

D. Appellants' objection to the sufficiency of the chain of possession of exhibit 1 is not well taken. Sufficient specific identification of exhibit 1 by the informant, by the deputy sheriff and by the laboratory chemist, coupled with testimony of a chain of possession, existed to support the admissibility of the exhibit into evidence. Any weaknesses therein were matters attributable to the weight of the evidence and not matters conclusively requiring the exclusion of the exhibit from evidence.

E. The other claims under this assignment as to evi-

dence of sale and as to evidence relating to the identity of persons have already been disposed of in our discussion of the first two assignments of error.

V. "The trial court erred in ordering the testimony of Babette Courtney stricken, upon motion of the prosecution, and, erred in instructing the jury to disregard her testimony, upon motion of the prosecution."

Babette Courtney testified, among other things, as to having known the informant for 18 years, having been his steady girl friend for five and one half months; that he had told her when she was trying to get him to go to church that he was an atheist (a conversation he had denied on cross-examination); that she had accompanied him to the Kenneth Spitsnaugle home where he committed acts of vandalism (which acts he had denied on cross-examination); that he had told her he was a policeman, was working for the deputy sheriff, had a badge, and had been paid $950 by the deputy sheriff for his services for turning in to the defendants (all of which he had denied on cross-examination); that on numerous occasions at numerous places he had stolen various articles of personal property (all but one of which he had denied on cross-examination); that he had admitted burning down buildings; that "he said he would rather tell a lie than tell the truth because it was easier and more fun" (a statement which on cross-examination he denied having made); that she was acquainted with his reputation for truth and veracity in the area of his home town, that his reputation is "don't believe him", and that she would not believe him if he testified under oath.

Her testimony in these respects was received, with the exception of the questions about atheism, without objection by the prosecution. However, at the close thereof the prosecution moved for a mistrial for the stated reason that the testimony of the informant could not be impeached by evidence that he had made statements prior to trial contradictory to those made in his examination on trial as to facts which were collateral or immaterial to the issues being tried. As an alternative to mistrial the prose-

cution moved that "the jury be admonished to completely disregard her testimony." The trial court thereupon overruled the motion of the prosecution for a mistrial, overruled the prosecution's objection to the testimony about atheism, overruled the prosecution's objection to the testimony that the informant had told Mrs. Courtney that he had been paid $950 by the deputy sheriff for turning the defendants in, and sustained the objection of the prosecution to all of her other testimony ordering the jury to disregard same.

It is basic to criminal law and procedure that an accused may assail the character of a witness for the state. 98 Corpus Juris Secundum 389, Witnesses, Section 495. It is largely within the discretion of the trial court to determine how far a litigant may go in showing facts affecting the credibility of a witness. 98 Corpus Juris Secundum 390, Witnesses, Section 497. Nevertheless, a defendant in a criminal action is "entitled to all the evidence in the case legitimately bearing on the question of" the veracity of a witness for the state. *Shriedley* v. *State*, 23 Ohio St. 130, 144. In Ohio proof to impeach a witness' credit for truth and veracity is limited to his reputation in that respect, and it is not competent to inquire of the general reputation of the witness. 56 Ohio Jurisprudence 2d 797, Witnesses, Section 360, and authorities therein cited. The defendant may impeach the state's witness by proving his bad reputation for truth and veracity as it goes directly to discredit his testimony.

Here the defendants laid a proper foundation for the testimony of Mrs. Courtney as to the informant's general reputation for truth and veracity. She had the means of knowing this reputation, testified that she knew it, testified what it was, and testified whether she would believe the witness under oath. Irrespective of whether the trial court committed error in taking any other of her testimony from the consideration of the jury the trial court abused its discretion and committed error prejudicial to the defendants in taking from the jury consideration of the testimony of Mrs. Courtney as to the informant's general

reputation for truth and veracity. This assignment of error is, therefore, well taken.

VI. "The trial court erred in permitting the prosecuting attorney to argue facts not in the record, over objection, particularly when the prosecutor inflamed the jury with an emotional appeal for assistance in stamping out the increasing traffic in drugs and hallucinogens."

Under this assignment of error defendants complain of many portions of the prosecutor's argument to the jury. Without setting forth in detail each and all of these separate arguments we conclude that most did not constitute prejudicial error because they either constituted fair comment upon the evidence adduced, or constituted reasonable rebuttal to matters brought forth in the argument of defense counsel, or, if improper, were of such nature that they could have been cured at the time by instruction on the part of the court to the jury to disregard them, had objection been made, none having been timely made.

However, we do find that complaint is properly made of the following remarks by the prosecutor:

"* * * we, in this area, as in many areas, are confronted with a problem. It was slow in getting here, but we have got it, *and we have to do something about it.*

"Frankly, it's a new experience to those of us that work with the law, and what I refer to is the increasing traffic in drugs and hallucinogens, and, unfortunately, and more particularly in our teenagers and young people—

"Mr. Beach: Object. We are going beyond the record.

"Mr. Rinebolt: Your Honor, Mr. Beach—

"Court:—overruled.

"Mr. Rinebolt:—I submit to you that *we have a responsibility to stamp out this traffic* and I refer to it as traffic, the buying, the selling, the giving away, the dispensing, whatever you want to call it, is a bad thing. It's against the law, and it's going to have to be stamped out." (Emphasis added.)

Such comments call for conviction as a duty to society and not by reason of proof of guilt. As stated by Judge Kovachy in *State* v. *Cloud,* 112 Ohio App. 208, 217:

"Arguments of counsel in the trial of a lawsuit are permitted for the sole purpose of aiding the jury in analyzing the evidence and thus assisting it in determining the facts of the case. Arguments made to incite a jury to convict to meet a public demand are inimical to the basic rights of a defendant, since they prevent him from having a fair and impartial trial to which he is entitled under the law. The law contemplates that he should be convicted on facts proved beyond a reasonable doubt under law applicable to facts so proved. Such trial was not accorded this defendant."

We conclude that the prosecutor's remarks quoted were erroneous and prejudiced the basic rights of these defendants.

VII. "The trial court erred in its instruction to the jury, in that, the charge was inconsistent on material issues; in that, portions of the charge were unintelligible; in that, the charge contained misdirections; in that the court refused, after request, to charge upon a lesser included offense; in that, the charge given was not consistent with the evidence of the case; in that, the court failed to instruct the jury as to the law under which the indictment was laid; and, in that, the court, in effect, directed a verdict against the defendants."

A. Assuming, without finding, that the indictment should not have gone to the jury room we find no prejudice to the rights of the defendants appearing in the record from such fact.

B. Although the court's charge was not technically perfect with respect to the number of crimes for which defendants were being tried a consideration of the entire charge, together with a consideration of all of the verdict forms on which the case was submitted to the jury and the verdict arrived at, discloses that no prejudice to the rights of the defendants arose from such imperfections.

C. Examination of the record reveals that only two exhibits were offered and received in evidence, one pursuant to testimony and one by stipulation, and both being state's exhibits. At worst, the obvious attempt of the court to correct a slip of the tongue as to the effect of the

view in the consideration of exhibits, would have been that one, and not both of the exhibits would be considered by the jury. The prejudice thereby occurring, if any, would be prejudice to the state and not to the defendants.

D. Appellants' claim of an erroneous instruction as to consideration of the facts by the jury is hypertechnical and no prejudice appears in the record.

E. The claim as to the instruction limiting the purpose of evidence of the commission of certain criminal acts deals with the correction by the court of an inadvertent reference to "the defendant" as having committed such acts rather than to "a witness" as having committed them. The correction was proper and there is no reason to believe that the jury prejudicially misconstrued the court's correction.

F. Appellants then complain as to alleged conflicting instructions as to intent, the trial court having instructed that intent was an element of the crime charged.

As hereinbefore quoted from R. C. 3719.44 (E), the crime therein proscribed is to "unlawfully dispense or administer any hallucinogen to a minor," a crime which is *malum prohibitum* and not *malum in se*. In the case of *State* v. *Conley*, Case number 1312, Court of Appeals of Marion County, decided by this court on August 23, 1971 (opinion unpublished), this court held that the crime proscribed by R. C. 3719.44 (D), *i. e.*, to "sell * * * any hallucinogen except in accordance with Sections 3719.40 to 3719.-49, inclusive, of the Revised Code," required no specific intent or knowledge as an element of the offense. The definition of the crime of unlawfully dispensing an hallucinogen to a minor is exactly parallel in its requirements in this respect. See also 15 Ohio Jurisprudence 2d 292, Criminal Laws, Section 31.

As intent is not an element of the crime any instruction by the trial court requiring the proof of an intent, even if confusing as to its character, was to the benefit of the defendants and not of the state and could not have prejudiced the defendants.

G. Although the instruction of the trial court as to

the definition of "dispense" is too broad and does not relate specifically to what we construe the legislature's meaning to be, in that it contains the meanings "to weigh out or pay out, regulate," it is otherwise appropriate. As the crime is to "unlawfully dispense * * * any hallucinogen *to a minor*," it would reasonably appear that any inappropriate meanings in the court's definition would be sufficiently qualified that no prejudice from their use in conjunction with the appropriate meanings would result.

H. We cannot see that the trial court's instruction that the word unlawful "means that which is contrary to law or unauthorized by law," constitutes an error of commission, if reasonably understood. Obviously the phrase "unlawfully dispense" connotes that there would be means existing whereby hallucinogens could be lawfully dispensed to a minor. If that were not so the word unlawfully would be surplusage. The court could have set forth the means of lawfully dispensing hallucinogens to a minor and concluded that to dispense by other means would be unlawful. This, however, would be an omission to instruct which was not called to the attention of the trial court by the defendants accompanied with a request to instruct. No error therefore could be properly claimed by appellants.

I. Defendants' complaint about the varying instructions as to the use of the six separate verdict forms, specifically and respectively, "if this is their verdict," "if they so choose," "if they desire," and "if they see fit" (applied to three forms), is hypertechnical. Though such phrases may not have been technically explicit there is nothing in the record to indicate that the distinctions existing for the respective use of the various verdict forms were not understood by the jury. This is particularly evident in that the jury had no difficulty in agreeing on the use of one form within the period of approximately one hour and twenty minutes without seeking additional instruction.

J. In view of the prejudicial errors which we have previously found requiring reversal of the judgment and a new trial it would be largely an academic exercise for this court to separately treat and consider each claim of the

108

appellants as to unintelligible instructions and as to misdirections. Some of these claims we have heretofore disposed of in relation to other of the claims of the appellants. Other claims relate to matters which, if erroneous or improper, operated to the benefit of the appellants rather than to the benefit of the state. Some instructions which would in themselves be unintelligible or constitute misdirections are clarified satisfactorily by reference to other accurate and explicit portions of the charge.

Although total accuracy of a charge to the jury is the desired but almost unreachable goal of all trial judges neither common sense nor the general assembly impose perfection as a requirement of conviction or lack of perfection as a reason for reversal. Indeed, R. C. 2945.83 prohibits the reversal of a judgment of conviction because of a "misdirection of the jury unless the accused was or may have been prejudiced thereby."

The record does not affirmatively show that the defendants were prejudiced by the alleged unintelligible instructions and misdirections of which they complain. Considering the charge in its totality and the weight and character of the proof it is also our opinion that there is no reason to conclude that they *may* have been prejudiced thereby.

K. Defendants complain that the trial court erred in not charging on the alleged lesser included offense of "possession" when requested to do so. In the context of all of the other claims of the defendants the offense of "possession" referred to in the request could not have been the offense of possession for sale set forth in R. C. 3719.44 (B) but had to be the offense set forth in R. C. 3719.41 of possession of an hallucinogen "with intent to produce hallucinations or illusions." In the case of *State* v. *Culp*, Case No. 1304, Court of Appeals of Marion County (unpublished), this court decided on August 23, 1971, that the intent set forth in R. C. 3719.41 was an essential element of the crime therein defined. As intent, of any character, is not an essential element of the crime defined by R. C. 3719.44 (E), upon which the indictment herein was founded, the crime of possession of an hallucinogen as defined in R. C.

3719.41 is not a lesser included offense of the crime of un-lawfully dispensing an hallucinogen to a minor prohibited by R. C. 3719.44 (E). The trial court properly refused to so charge.

VIII. "The trial court erred in overruling defendants' motion for a new trial, the conviction being either devoid of, or manifestly against the weight of the evidence and contrary to law."

As the defendants set forth among their stated grounds for new trial in their motion therefor those things heretofore found by this court as prejudicial error and which we hereafter conclude require reversal of the judgment, we must also conclude that the judgment of the trial court was contrary to law and that the trial court committed prejudicial error in overruling the motion for a new trial.

For the prejudicial error of the trial court in its order striking all of the testimony of Babette Courtney other than that specifically excepted from the operation of such order, in permitting the prosecuting attorney in his final argument to the jury, over objection, to incite the jury to convict to meet a public demand, and in overruling the motions of the defendants for a new trial the judgment of the trial court must be reversed and the cause be remanded for a new trial.

*Judgment reversed.*

COLE and KERNS, JJ., concur.

KERNS, J., of the Second Appellate District, sitting by designation in the Third Appellate District.