OPINION
{¶ 1} Defendant Joseph S. Dean appeals a judgment of the Municipal Court of Fairfield County, Ohio, convicting and sentencing him for one count of theft in violation of R.C. 2913.02 and possession of two driver's licenses in violation of R.C. 4507.02, after a jury found him guilty of both charges. Appellant assigns three errors to the trial court:
 {¶ 2} "The trial court committed error when it overruled the defendant's motion for a directed verdict of acquittal on the charge that he violated R.C. 4507.02(A)(4) based upon an erroneous statutory interpretation.
 {¶ 3} "The trial court committed error when it overruled the defendant's motion for a directed verdict of acquittal on the charge that he violated R.C. 4507.02(A)(4) based upon an erroneous statutory interpretation.
 {¶ 4} "The defendant's case was not submitted to a lawfully empaneled jury as demanded by the defendant and as required by R.C.2945.28."
 {¶ 5} At trial, the State presented evidence appellant pumped gas into his vehicle at 6005 Winchester Road, Carroll, Fairfield County, Ohio. The pump appellant used gave the customer the option of paying at the pump with a credit card or paying in cash inside the station. The cashier/attendant testified if appellant has inserted a credit card into the payment machine, she would have known, because letters "PAP" for pay at pump would have appeared on her computer screen. In addition, inserting a credit card into the pump would cause a beeping noise. The cashier testified the letters "PAP" did not show up on her computer screen, nor did she hear any beeping noise. Her manager testified that if any kind of card is inserted in the machine, even an expired credit card or a library card, the pump would sound the alarm.
 {¶ 6} The cashier testified appellant drove away without paying for the gas he had taken, in the amount of $7.57. As he left, the cashier focused her binoculars on his rear license plate, but there was a blue paper towel over his rear license plate. The manager testified he went outside and also observed the blue towel over the license plate. He attempted to catch the vehicle, but was unsuccessful. However, the manager identified appellant and described his vehicle in court.
 {¶ 7} Some fifteen minutes later, Darrell Karr, came to the station, and gave the manager the temporary tag number of the vehicle which had left without paying.
 {¶ 8} Karr testified he saw the car come out of the station with a man in pursuit. He observed the appellant travel some distance, and then pull over to the side of the road. Karr drove his vehicle past appellants, and then slowed down so appellant would have to pass him. Karr watched appellant's headlights come towards the vehicle, and after it passed his car, Karr wrote down the number of the temporary tag.
 {¶ 9} Deputy Marty Norris received a description of appellant and his car, as well as the license number of the vehicle. Norris testified he located appellant's vehicle and pulled him over. Appellant informed the officer he had paid for the gas using a credit card, although he did not have a receipt. Appellant gave Norris the card he allegedly used to purchase the gas, and Officer Norris noticed it had expired more than two years previously. Appellant was not carrying any other credit cards, but Officer Norris noticed he had two driver's licenses in his wallet.
 {¶ 10} The State presented photo copies of both driver's licenses showing neither was expired, but each possessed a different address and issuance date.
 {¶ 11} Finally, Norris testified he asked appellant about the blue paper towel witnesses alleged covered his license plate. Appellant told Norris he had used a blue paper towel to wipe off a mark on the license plate, but Norris testified dust uniformly covered all portions of the rear of the vehicle, and nothing had been wiped clean.
 {¶ 12} Appellant presented the testimony of his girlfriend, who had been in the car with him at the time. She testified although she did not get out of the car at the Speedway station, she did observe appellant pay for the gas. She further testified appellant was supposed to use her credit card, but must have pulled his own credit card out instead. She testified appellant had his son with him, and pulled over not far from the gas station to retrieve a toy from the trunk for the child. The girlfriend testified she did not observe the manager run out of the Speedway station as she and appellant were leaving.
 {¶ 13} The girlfriend testified Officer Norris found her credit card in appellant's wallet, and gave the card back to her. On rebuttal, Officer Norris testified the only credit card he had seen in appellant's wallet was the expired one.
 I {¶ 14} In his first assignment of error, appellant argues the court should have sustained his motion for a directed verdict on the charge of having two driver's licenses.
 {¶ 15} Pursuant to Crim.R. 29(A), the trial court must construe the evidence in a light most favorable to the State, to determine if reasonable minds could reach different conclusions, as to whether the State has proven each element of the crime charged beyond a reasonable doubt, see State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. Our standard of review is a de novo one, and we will not reverse the trial court's judgment unless reasonable minds could only conclude the evidence failed to prove all the elements of crime beyond a reasonable doubt.
 {¶ 16} R.C. 4507.02 provides no person shall receive a driver's license unless and until that person surrenders to the Registrar all valid licenses issued to the person by another jurisdiction recognized in this state. The Registrar is to return the licenses to the issuing authority and notify it that the State of Ohio has issued a license. The statute further provides no person shall be permitted to have more than one valid license at any time.
 {¶ 17} Appellant argues the statute clearly prohibits a person from receiving an Ohio license if he possesses a driver's license issued by a jurisdiction other than the State of Ohio. Appellant argues no logical reading of the statute prohibits someone who holds a valid Ohio driver's license from obtaining a duplicate copy if the original is lost or stolen. Appellant argues because he never had two valid licenses from two separate jurisdictions, he cannot be charged under the multiple licenses prohibition.
 {¶ 18} Appellant correctly asserts that the Revised Code sections dealing with offenses or penalties must be strictly construed against the State and literally construed in favor of the accused, see R.C. 2901.04.
 {¶ 19} The State responds that if R.C. 4507.02 was intended to only apply to licenses issued by two different states, then it would be sufficient for the statute to require persons to surrender other jurisdictions' licenses. It would be unnecessary for the statute to state that no person shall be permitted to have more than one valid license at any time. The State argues it is presumed the entire statute is intended to be effective, and we must give the statute its plain meaning.
 {¶ 20} The State also points out the two driver's licenses were not identical, and as such, one cannot be considered a duplicate of the other.
 {¶ 21} Finally, the State asserts appellant waived any error when he failed to renew the motion for acquittal after he presented his defense, see Dayton v. Rogers (1979), 60 Oho St.2d 162, 398 N.E.2d 781.
 {¶ 22} We find the trial court did not err in reading the statute in question to prohibit appellant from possessing two different driver's licenses issued by the State of Ohio. We further find appellant waived any error herein.
 {¶ 23} The first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, appellant argues his conviction was against the manifest weight of the evidence.
 {¶ 25} In State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, the Ohio Supreme Court held that weight of the evidence concerns the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other.
 {¶ 26} Regarding the issue of possession of two valid licenses, we find the evidence stated in I, supra, if believed by the jury, was sufficient to prove every element of possession of two valid licenses charge.
 {¶ 27} Concerning the theft charge, the evidence must, beyond a reasonable doubt, support a conclusion that he knowingly obtained the gasoline he pumped into his vehicle by means of deception, or knowingly obtained the gasoline from the Speedway station without paying for it. Appellant argues the jury is required to find he knew the credit card he used to start the gas pump was invalid, and thus he intentionally deprived Speedway of its gasoline without paying for it.
 {¶ 28} We do not agree. The jury could have believed, pursuant to the testimony of the manager and cashier at the Speedway station, that appellant did not insert any card into the gasoline pump before he pumped the gas. The jury could have believed appellant obtained the gas by deceiving the gas station attendant into believing he was going to pay for the gas in cash after he put it into his vehicle.
 {¶ 29} We find there was sufficient competent and credible evidence presented on each element of both crimes charged to entitle the jury to find appellant guilty beyond a reasonable doubt on each.
 {¶ 30} The second assignment of error is overruled.
 III {¶ 31} In his third assignment of error, appellant argues his case was never presented to a properly empaneled jury because the oath prescribed in R.C. 2945.28 was not administered to the jurors.
 {¶ 32} R.C. 2945.28 set forth the language of the oath as "You shall well and truly try, and true deliverance make between the State of Ohio and the defendant (giving his name) so help you God. A juror shall be allowed to make the affirmation substituting the phrase "So help you God" with "This you do as you shall answer under the pains and penalties of perjury."
 {¶ 33} The transcript of proceedings indicates the oath administered to the jury was "Do you and each of you solemnly swear or affirm in the presence of almighty God that you will well, and truly try the matter in the difference between the State of Ohio, plaintiff and Joseph S. Dean, defendant and a true verdict give according to the evidence, so help you God.? Say I do or I affirm."
 {¶ 34} The record contains no objection from appellant to the form of the oath.
 {¶ 35} In State v. Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379, the Ohio Supreme Court held a court should not reverse a judgment of conviction because of an error if the error was not complained of at a time the trial court could avoid or prevent it, and where it does not affirmatively appear from the record the error prejudiced the defendant. In State v. Agner (1972), 30 Ohio App.2d 96, the Court of Appeals for Hancock County held a failure of a defendant to call the trial court's attention to a defect in the manner of administering an oath to a juror constitutes a waiver if it does not affirmatively appear from the record the defendant was prejudiced by the error.
 {¶ 36} Our review of the record leads us to conclude appellant was not prejudiced by the form of the oath.
 {¶ 37} The third assignment of error is overruled.
 {¶ 38} For the foregoing reasons, the judgment of the Municipal Court of Fairfield County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., Wise, J., and Boggins, J., concur.
topic: Criminal law — possession of multiple driver's licenses-manifest weight.