OPINION
{¶ 1} This timely appeal arises from the conviction of Appellant, Antoine L. Moman, in the Columbiana County Court of Common Pleas. Appellant was found guilty of two counts of trafficking in cocaine on September 12, 2002. For the following reasons, we affirm the decision of the trial court.
{¶ 2} Appellant was indicted by way of secret indictment issued by the Columbiana County Grand Jury on September 26, 2001. Appellant was arraigned on January 9, 2002, and charged with two counts of trafficking in cocaine in violation of R.C.2925.03(A)(1), third degree felonies. The charges resulted from two controlled cocaine purchases by the state's confidential informant, which occurred on two separate dates in February of 2001.
 {¶ 3} Appellant was appointed counsel and pleaded not guilty to both counts. The jury trial commenced on September 9, 2002.
{¶ 4} The state's evidence was primarily based on the testimony of its confidential informant, Michael Brown ("Brown"). Brown's testimony was supported by audio and video recordings of the transactions. Appellant was not visible in the video recording, and his name was not mentioned on the audiotapes.
{¶ 5} Appellant testified that he was not present at the location of the controlled buys on either date. Brown's testimony was the only evidence identifying Appellant at the location of the controlled purchases and as the seller of the cocaine.
{¶ 6} Appellant's first assignment of error asserts:
{¶ 7} "THE TRIAL COURT ERRED IN REFUSING TO PERMIT THE TESTIMONY OF THERESA BROWN TO BE PRESENTED TO THE JURY."
{¶ 8} Appellant argues that the trial court abused its discretion in excluding the testimony of Theresa Brown at trial. Theresa Brown, n.k.a. Theresa Beaver, is the ex-wife of the state's informant, Brown.
{¶ 9} A trial court has broad discretion in the admission of evidence. State v. Robb (2000), 88 Ohio St.3d 59, 68,723 N.E.2d 1019. A court's decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. State v. Graham
(1979), 58 Ohio St.2d 350, 352, 12 O.O.3d 317, 390 N.E.2d 805. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Weaver
(1988), 38 Ohio St.3d 160, 161, 527 N.E.2d 805, quotingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
{¶ 10} Appellant asserts that Theresa Brown's testimony was intended to show Brown's character for untruthfulness. Ohio R. Evid. 608(A) governs reputation and opinion testimony regarding a witness' character:
{¶ 11} "Opinion and reputation evidence of character.
{¶ 12} "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
{¶ 13} Very early into Ms. Brown's testimony, the prosecution objected on relevance grounds. Thereafter, and after inquiry by the court out of the jury's presence, Appellant's trial counsel indicated that Ms. Brown would testify about Brown's drug abuse and drug sales. (9/11/02 Trial Tr. Vol. 3, pp. 657-660.) Appellant's trial counsel never advised the judge that her testimony concerned Brown's character for untruthfulness.
 {¶ 14} Ms. Brown's testimony subsequently resumed as a proffer of evidence outside the presence of the jury. Direct examination by Appellant's trial counsel included:
 {¶ 15} "Q. Is this man a liar, in your opinion?
 {¶ 16} "A. Very much so.
 {¶ 17} "* * *
 {¶ 18} "Q. * * * You know, he was charged with a burglary charge, right?
 {¶ 19} "A. Right.
 {¶ 20} "Q. That he pled guilty to.
 {¶ 21} "A. Right.
 {¶ 22} "* * *
 {¶ 23} "Q. What happened there?
 {¶ 24} "A. He used a screwdriver to break into my house. * * *" (9/11/02 Trial Tr. Vol. 3, pp. 660-663.)
 {¶ 25} Appellant's counsel was then permitted to ask Ms. Brown questions in the jury's presence, however none of the questions posed in front of the jury concerned Brown's general character or reputation for truthfulness. (9/11/02 Trial Tr. Vol. 3, pp. 664-665.)
 {¶ 26} Upon review of Ms. Brown's proffered testimony in conjunction with Appellant's counsel's discussion with the court, it is clear that the testimony was not designed to show Brown's character for untruthfulness as permitted by Ohio R. Evid. 608(A)(1). Appellant's counsel's discussion with the court centers on his desire to have Ms. Brown testify regarding specific instances of conduct in contradiction to Brown's testimony. (9/11/02 Trial Tr. Vol. 3, pp. 656-660.) "Specific instances of the conduct of a witness, for the purpose of attacking * * * a witness's character for truthfulness * * * may not be proved by extrinsic evidence." Ohio R. Evid. 608(B).
 {¶ 27} Further, the two statements made by Ms. Brown regarding Brown's character for untruthfulness were that he is a liar and that he pleaded guilty to a burglary charge. (9/11/02 Trial Tr. Vol. 3, pp. 660, 662.) Both statements were made outside the presence of the jury. The prosecution did address Brown's burglary charge in the jury's presence.
 {¶ 28} In support of his argument, Appellant relies on Statev. Agner (1972), 30 Ohio App.2d 96, 283 N.E.2d 443, which held: "[t]he striking from consideration of the jury of competent testimony of a witness for the defendant in a criminal action as to the general reputation for truth and veracity of a witness for the state constitutes prejudicial and reversible error." Id. at paragraph three of the syllabus.
 {¶ 29} The facts in Agner, supra, are distinguishable from those in the instant matter. The Agner appellate court stressed the fact that the defendant, "laid a proper foundation," for the witness to testify concerning the, "informant's general reputation for truth and veracity." Id. at 103. The Agner
appellate court also found that the witness had, "the means of knowing this reputation, testified that she knew it, testified what it was, and testified whether she would believe the witness under oath." Id. Thus, Agner held that the trial court committed prejudicial error in excluding the witnesses' testimony about the informant's general reputation for truth and veracity. Id.
 {¶ 30} In this action, Appellant's trial counsel did not proffer Ms. Brown's testimony relative to Brown's reputation in the community for his ability to be truthful, but only her opinion that he was a liar.
 {¶ 31} In addition, Appellant's trial counsel stated that Ms. Brown's testimony was designed to contradict Brown's testimony regarding specific instances of conduct. (9/11/02 Trial Tr. Vol. 3, p. 657.) Based on the foregoing, the trial court's decision to exclude the testimony was not unreasonable, arbitrary, or unconscionable. Thus, Appellant's first assignment of error lacks merit and is overruled.
 {¶ 32} Appellant's second assignment of error asserts:
 {¶ 33} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS TRIAL COUNSEL'S FAILURE TO FILE A PRETRIAL MOTION TO SUPPRESS THE ADMISSION OF THE AUDIO AND VIDEO TAPES, FAILURE TO CONDUCT AN EFFECTIVE CROSS-EXAMINATION OF THE STATE'S WITNESSES AND FAILURE TO FILE NOTICE OF ALIBI AND TO PRESENT EVIDENCE OF SAME."
{¶ 34} The U.S. Supreme Court outlined a two-part test for evaluating whether assistance of counsel was so ineffective to require a reversal in Strickland v. Washington:
{¶ 35} "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
{¶ 36} "* * *
{¶ 37} "* * * [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" (Citation omitted.)Strickland v. Washington (1984), 466 U.S. 668, 687-689,104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, State v. Thompson
(1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407.
{¶ 38} Appellant identifies three allegations of ineffective assistance of counsel at trial.
{¶ 39} First, Appellant contends that his trial counsel failed to file a motion to suppress the admission of audio and videotapes. The informant, Brown, facilitated the recordings, which include audio recordings of February 19, 2001, and February 28, 2001, transactions, and a video recording of the February 28, 2001, transaction.
{¶ 40} Appellant's argument concerns the handling and storage of the tapes prior to the commencement of trial. Appellant asserts that the introduction of the tapes into evidence was contrary to R.C. 2933.59 (A) and (B) and the Equal Protection Clause of the United States Constitution.
{¶ 41} R.C. 2933.59 is a criminal statute that identifies methods to execute a warrant to intercept communications. Appellant concedes that it does not specifically govern the interceptions in this case since they were recorded without a warrant. However, Appellant asserts that his trial counsel was ineffective because he failed to assure that these tapes received the safeguards provided for warranted interceptions. Appellant does not provide any authority in support of this assertion.
{¶ 42} Further, Appellant does not allege that the recordings were mishandled, altered, or improperly stored. Thus, there would have been no reason for Appellant's trial counsel to file a motion to suppress the recordings.
{¶ 43} It should be noted that Appellant's counsel did object to the admission of the audio and video recordings. No grounds for the objections were stated, and they were overruled. (9/11/02 Trial Tr. Vol. 2, pp. 196, 285, 292.)
{¶ 44} Assuming arguendo that Appellant's trial counsel's failure to file a motion to suppress the video and audiotapes was unreasonable, Appellant must still establish that he was prejudiced as a result. See Strickland, supra. Appellant has failed to identify any resulting prejudice and none is apparent from the record.
{¶ 45} Appellant also asserts that the introduction of the recordings at his trial was contrary to the Equal Protection Clause of the United States Constitution.
{¶ 46} This Court has addressed this issue in State v. Keats
(Aug. 20, 1996), 7th Dist. No. 93-C-57, 2-3, appeal not allowed77 Ohio St.3d 1516, 674 N.E.2d 370. In Keats, the appellant argued that the safeguards found in R.C. § 2933.59(A)(B) should be required for warrantless interceptions pursuant to the Equal Protection Clause of the United States Constitution. Id.
{¶ 47} As in Keats, supra, Appellant failed to identify even a potential violation of the R.C. 2933.59(A)-(C) provisions. Thus, this Court, as in Keats, cannot address the alleged equal protection violation. Id. Based on the foregoing, Appellant's first allegation of ineffective assistance of counsel lacks merit.
{¶ 48} Appellant next argues that his trial counsel's cross-examination on crucial issues was inadequate, thus constituting ineffective assistance of counsel. Appellant asserts that he was prejudiced as a result of his trial counsel's performance, which fell below the objective standard of reasonableness. Appellant identifies three particular questions or lines of questioning that he claims demonstrates ineffective assistance of counsel.
{¶ 49} Upon reviewing the trial transcript, it is clear from the record that Appellant's trial counsel addressed the crucial areas identified by Appellant to some extent. (9/10/02 Trial Tr. Vol. 2, pp. 322, 325; 9/11/02 Trial Tr. Vol. 3, pp. 612-617.) His trial counsel's alleged failures to "press" these issues on cross-examination may have simply been trial strategy. See Statev. Hubbard, 150 Ohio App.3d 623, 2002-Ohio-6904, 782 N.E.2d 674
at ¶ 37. As such, Appellant failed to establish that his trial counsel's conduct fell below an objective standard of reasonable representation. Appellant also failed to show, once again that he was prejudiced as a result of the alleged poor representation. Thus, Appellant's second assertion of ineffective assistance of counsel lacks merit.
{¶ 50} Appellant's third assertion of ineffective assistance of counsel centers on his alibi defense. First he claims that his trial counsel failed to file a notice of alibi pursuant to Crim.R. 12.1.
 {¶ 51} Crim.R. 12.1 notice of alibi provides:
 {¶ 52} "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. * * * If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 53} It is undisputed that Appellant's trial counsel did not file a notice of an alibi pursuant to Crim.R. 12.1. However, Appellant was allowed to testify as to his whereabouts on the nights in question on direct examination. (9/11/02 Trial Tr. Vol. 3, pp. 731-733.)
 {¶ 54} Appellant also asserts that his trial counsel failed to investigate his alibi and that the record is devoid of corroborating evidence to support the alibi. However, Appellant's trial counsel presented the testimony of Richard "Steven" Pack, who testified that Appellant was not present at the location of the transaction on February 28, 2001. (9/11/02 Trial Tr. Vol. 3, p. 648.) Appellant's sister also testified that Appellant was not present at the location of the February 28, 2001, transaction. (9/11/02 Trial. Tr. Vol. 3, pp. 676-677.) Thus, it appears from the record before us that without a formal motion, Appellant was able to present an alibi for the crimes and cannot argue his counsel's alleged failure in this respect.
 {¶ 55} Appellant also argues that he was denied the effective assistance of counsel by his trial counsel's failure to request a jury charge on the law regarding alibi.
 {¶ 56} It is undisputed that Appellant's trial counsel did not request the alibi jury charge, and the trial court did not sua sponte provide the jury charge. The Eighth District Court of Appeals has held that a lack of jury instruction on the defense of alibi is not plain error. State v. Sims (1982),3 Ohio App.3d 331, at 335, 445 N.E.2d 245. It held in part that, "[i]n the case of alibi, * * * if the defendant is found, beyond a reasonable doubt, to have committed the crime, then the jury necessarily must have considered and disbelieved the evidence of alibi." Id.
 {¶ 57} In the case before us, the jury was not charged with an alibi instruction, but it did hear Appellant's testimony regarding his alibi. The jury was never instructed to disregard the alibi testimony despite the lack of notice of alibi. In fact, the jury was ordered to consider all of the evidence. As a result, the jury necessarily must have disbelieved the alibi evidence. See Sims, supra.
 {¶ 58} Based on the foregoing, even if Appellant's trial counsel erred in failing to request the appropriate jury instruction on the alibi defense, Appellant fails to show that the outcome of the trial clearly would have been different had the instruction been given. As a result, Appellant's alleged ineffective assistance of counsel argument for the lack of an alibi jury instruction fails.
 {¶ 59} Failing to find merit in any of the three subissues in Appellant's second assignment of error, his second assignment of error is overruled in its entirety.
 {¶ 60} Appellant's third assignment of error asserts:
 {¶ 61} "THE TRIAL [SIC] ERRED IN PERMITTING THE PROSECUTING ATTORNEY IN CLOSING ARGUMENT TO USE THE BAD CHARACTER OF APPELLANT'S FRIENDS TO ATTACK THE APPELLANT'S OWN CHARACTER AND FURTHER TO PERMIT THE PROSECUTING ATTORNEY TO SUGEST [SIC] INNUENDOS TO THE JURY NOT CONTAINED IN THE RECORD SAME [SIC] CONSTITUTING PROSECUTORIAL MISCONDUCT."
 {¶ 62} This assignment of error is addressed in two parts. First, Appellant asserts that the trial court erred in allowing the prosecutor to allude to matters unsupported by the evidence. Appellant argues that the prosecutor's comments regarding Appellant's sister's testimony was prosecutorial misconduct. Specifically, the prosecutor suggested in his closing argument that Appellant's sister seemed to be blaming the drug charges against Appellant on her deceased boyfriend.
 {¶ 63} Appellant's sister, Nicole Moman, never directly stated that her deceased boyfriend was responsible for the drug sales. She did, however, testify that Appellant was not present on the date of one of the charges; that her boyfriend, who is now deceased, was present; and, that her deceased boyfriend was the individual who answered the door and spoke with the informant on that date. (9/11/02 Trial Tr. Vol. 3, pp. 671, 675-677.)
 {¶ 64} The test for prosecutorial misconduct in closing argument consists of two parts. First, we must determine whether the remarks were improper. If so, we must determine if the remarks prejudicially affected substantial rights of the accused.State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. This determination should be done on a case-by-case basis, and the closing argument should be considered in its entirety to determine whether the remarks were prejudicial. State v. Moritz
(1980), 63 Ohio St.2d 150, 157, 407 N.E.2d 1268.
 {¶ 65} Appellant's trial counsel objected to the prosecution's remarks that the sister claimed her deceased boyfriend was the drug dealer and not Appellant, and the court overruled the objection as fair comment. (9/12/02 Trial Tr. Vol. 4, p. 805.)
 {¶ 66} The trial court judge appropriately overruled the objection because the comments in closing argument were indeed fair, based on the sister's testimony. These comments did not undermine Appellant's conviction. The prosecution's references to this "defense" were proper, since the sister's testimony appears to raise an unspecified defense theory. As such, this part of Appellant's third assignment of error fails.
 {¶ 67} Secondly, Appellant claims that the prosecutor used the "bad character" of Appellant's friend to attack Appellant's character. The portions of the prosecutor's closing remarks which Appellant takes issue with primarily concern Appellant's character in relation to his friend, Brandon Kelly:
 {¶ 68} "MR. GAMBLE: * * * Why does the Defendant distance himself from Brandon Kelly? Well, he distances himself from Brandon Kelly because you are with whom you associate. We're known by those people who [sic] we associate. If Brandon Kelly was my best friend I think you'd all have an opinion of me. The opinion would me [sic] probably that I shouldn't be a county prosecutor. * * *
 {¶ 69} "Brandon Kelly got [sic] no job; he's twenty-five * * * But this kid is walking around * * * with thirty-five hundred dollars cash in his pocket. * * * a couple of blunts, uh, and some crack cocaine laying on the street beside [him] * * * at two o'clock in the morning on the street corner? Do you think he's telling you the truth? And is that the kind of guy you would want to be associated with? One of your best friends?" (9/12/02 Trial Tr. Vol. 4, pp. 818-819.) (Defense objection sustained as to the lack of any evidence that there was crack cocaine on the street.)
 {¶ 70} The Ohio Supreme Court in State v. Keenan (1993),66 Ohio St.3d 402, 613 N.E.2d 203, addressed a comparable prosecutorial misconduct argument to the one at issue here. InKeenan, the defendant was convicted of two counts of aggravated murder, both carrying death specifications. On appeal, the defendant alleged prosecutorial misconduct during the guilt-phase closing argument.
 {¶ 71} With regard to the guilt by association error,Keenan held:
 {¶ 72} "By arguing explicitly that the bad character of Keenan's friends reflected on Keenan's character, * * * the prosecutor ignored the fact that `[u]nder longstanding principles of Anglo-American jurisprudence, an accused cannot be convicted * * * by proving he * * * is a bad person.'" Id. at 409-410 citingState v. Jamison (1990), 49 Ohio St.3d 182, 184,552 N.E.2d 180.
 {¶ 73} Keenan went on to hold that: "[a] defendant cannot be adjudged guilty on the ground that he * * * associates with bad people. Such arguments are highly prejudicial." Id. at 409,613 N.E.2d 203 citing United States v. Labarbera (C.A. 5, 1978),581 F.2d 107, 109.
 {¶ 74} Appellant's trial counsel did not object to the prosecutor's closing remarks referring to the bad character of Brandon Kelly. As a result of the lack of objection, the claimed misconduct is waived unless there is plain error. State v.Slagle (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916.
 {¶ 75} The standard for plain error is the same standard of review as prosecutorial misconduct in closing arguments, i.e., whether the accused's substantial rights are so adversely affected as to undermine the fairness of the guilt determining process. State v. Swanson (1984), 16 Ohio App.3d 375, 377,476 N.E.2d 672. Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise. State v.Cooperrider (1983), 4 Ohio St.3d 226, 448 N.E.2d 452.
 {¶ 76} The state asserts that these closing comments by the prosecutor rebutted defense counsel's closing argument. However, Appellant's trial counsel did not state that Appellant had distanced himself from Brandon Kelly. Counsel stated that Kelly did not know anything about Appellant's case, and that Kelly was not a defense witness. (9/12/02 Trial Tr. Vol. 4, p. 788.)
 {¶ 77} In reviewing Appellant's testimony, it is not at all clear that Appellant was trying to distance himself from Kelly:
 {¶ 78} "[Cross-examination of Appellant by Attorney Gamble:]
 {¶ 79} "Q. You're friends with Brandon Kelly. Brandon testified here today that he's one of your best friends; am I right?
 {¶ 80} "A. Yes.
 {¶ 81} "* * *
 {¶ 82} "Q. Okay. You had [sic] out with these guys.
 {¶ 83} "A. I haven't been doing much of hanging out because I'm needed [helping his elderly grandmother] at the house a lot.
 {¶ 84} "Q. Are you hanging out with these guys? You hang with them.
 {¶ 85} "* * *
 {¶ 86} "Q. * * * You said you've been hanging out with them — you haven't been hanging out with them lately, but you hung out with them before.
 {¶ 87} "A. That's not what I said. I didn't say, `Lately.' I said, `I haven't done much hanging out because I be at the house.'" (9/11/02 Trial Tr. Vol. 3, pp. 738-739.)
 {¶ 88} The comments by the prosecutor at issue here are questionable, at best. However, even assuming that the aforementioned comments by the prosecutor constitute error underKeenan, the misconduct is not reversible error unless, "[t]he conduct deprives defendant of a fair trial." State v.Apanovitch (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, affirmed by Keenan, 66 Ohio St.3d at 405, 613 N.E.2d 203. Prosecutorial misconduct is only reversible error, "in rare instances." State v. DePew (1988), 38 Ohio St.3d 275, 288,528 N.E.2d 542.
 {¶ 89} The Keenan Court held under that fact pattern that, "the prosecutor's pattern of misconduct throughout much of the trial and during closing argument did deprive the defendant of a fair trial." Id. at 405, 613 N.E.2d 203. Keenan also discussed four other errors in the prosecutor's closing argument in holding that the defendant was denied a fair trial. Keenan does not specify whether the bad character comments, standing alone, would be seen to have deprived the defendant of a fair trial. Appellant has not identified any other supportable prosecutorial errors in the instant case.
 {¶ 90} Based on the foregoing, there is no doubt that the prosecutor should not have made the "bad character" comments in his closing argument. However, in order to reverse, we still must make a determination that Appellant was prejudiced as a result, i.e., that he was denied a fair trial.
 {¶ 91} Similar cases addressing the issue of a "stand alone" improper comment dismiss the prosecutor's misconduct as harmless because of the overwhelming evidence against the defendants. SeeState v. Willard (2001), 144 Ohio App.3d 767, 761 N.E.2d 688;State v. Hirsch (1998), 129 Ohio App.3d 294, 717 N.E.2d 789;State v. Benson (1992), 81 Ohio App.3d 697, 705,612 N.E.2d 337.
 {¶ 92} On review, while the evidence in the instant matter cannot be characterized as overwhelming, we cannot conclude that "but for" this comment, Appellant would not have been convicted. This case revolved around credibility of the witnesses. In order to reverse on this issue, this Court would necessarily have to rule on witness credibility and supersede the role of the trier of fact. We decline to do so based on one questionable comment.
 {¶ 93} Based on the foregoing, while the prosecutor's comments about Mr. Kelly during closing argument were undeniably improper, we cannot conclude that they were so egregious based on the entire record here that they precluded Appellant from having a fair trial. As such, Appellant's third assignment of error is overruled, and the trial court's judgment is affirmed in its entirety.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.