OPINION
{¶ 1} Defendant-appellant, Michael E. Lette, appeals the judgment of the Painesville Municipal Court, finding him guilty of Aggravated Menacing. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On August 6, 2007, Lette was charged, by way of a Complaint, with Aggravated Menacing, a misdemeanor of the first degree in violation of R.C. 2903.21. *Page 2 
 {¶ 3} Trial was originally set for October 16, 2007, and, upon Lette's motion, continued until October 30, 2007.
 {¶ 4} The following testimony was given at trial. Chery Townsend, the complainant, testified that Lette owed her money. On August 3, 2007, Lette met her at a bar in Perry Township. Lette made the comment that he was going to shoot himself in her presence. Eventually, Lette told Townsend that she could meet him in ten minutes at the Auction House, a store where Lette worked, and he would pay her the money.
 {¶ 5} Townsend had a mutual friend, Jim Duesler, drive her to the Auction House. Townsend testified she did not want to go by herself because Lette "had been drinking all day" and she "didn't trust him."
 {¶ 6} When Townsend and Duesler arrived at the Auction House, Lette was sitting on his motorcycle in the parking lot. Townsend approached him while Duesler remained in the car. Lette was irritated because Townsend had not come alone. Townsend noticed a gun sitting between his legs on the motorcycle. Townsend took a step backwards. Lette asked where she was going and told her that she was coming with him. Townsend told Lette she was leaving and he replied, "if I can't have you, nobody can." Townsend retreated to the car while Lette yelled at her and waved the gun. After Lette and Duesler exchanged some words, Townsend and Duesler drove away.
 {¶ 7} On cross-examination, Lette's counsel elicited an admission that Townsend was previously charged with Forgery, for signing Lette's ex-wife's name to his divorce papers and then notarizing the signature. The prosecutor acknowledged that Townsend had been convicted for Attempted Forgery. *Page 3 
 {¶ 8} Duesler testified that he drove Townsend to the Auction House where she met Lette. Duesler did not hear Lette threaten Townsend, but saw him brandish a gun and noted that Townsend backed up to the car slowly, always facing Lette. Neither Duesler nor Townsend testified that Lette actually pointed the gun at either of them. Later that evening, Duesler testified that he heard Lette threaten to shoot himself.
 {¶ 9} The State rested its case at this point. Counsel for Lette moved the court, pursuant to Criminal Rule 29, to dismiss the charge for insufficient evidence and the court overruled the motion.
 {¶ 10} Teresa Brummitt was the first witness for the defense. She testified that, after getting "off of work" on August 3, 2007, she picked Lette up from the Auction House so that he could help her move. She testified that they spent the rest of the weekend camping with friends.
 {¶ 11} On cross-examination, the prosecutor moved the court to strike Brummitt's testimony on the grounds that she was an alibi witness and that Lette had not provided seven-days notice that he intended to call her, as required by Criminal Rule 12.1.
Lette's counsel asked the court to deny the motion because, "this witness just became known to me, I believe, on Friday [October 26], the name of these witnesses."
 {¶ 12} The court granted the State's motion, rejecting Lette's counsel's suggestion of a continuance on the grounds that trial had already started.
 {¶ 13} Lette then testified on his own behalf. He denied threatening Townsend or even owning a gun. Lette testified that Brummitt picked him up on the afternoon of August 3 at about 4:00 or 4:15 and that he was with her the rest of the weekend. *Page 4 
 {¶ 14} At the conclusion of the trial, the court found Lette guilty of Aggravated Menacing.
 {¶ 15} On November 15, 2007, the municipal court imposed a fine of $150.00 plus costs and a sentence of sixty days in the Lake County Jail, with fifty days suspended provided that Lette abides by the conditions of Community Control for twelve months.
 {¶ 16} Lette timely appeals and raises the following assignments of error.
 {¶ 17} "[1.] Defendant-appellant's sixth amendment right to counsel was violated in that his trial counsel was ineffective."
 {¶ 18} "[2.] The conviction for aggravated menacing was not supported by sufficient evidence and the trial court erred when it overruled appellant's motion for Criminal Rule 29 acquittal."
 {¶ 19} "[3.] The conviction for aggravated menacing was against the manifest weight of the evidence."
 {¶ 20} In his first assignment of error, Lette argues he received constitutionally ineffective assistance of trial counsel, on account of counsel's failure to file a Crim. R. 12.1 notice of alibi which resulted in the testimony of an alibi witness being struck from the record.
 {¶ 21} The Ohio Supreme Court has adopted a two-part test to determine whether an attorney's performance has fallen below the constitutional standard for effective assistance. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the *Page 5 
defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, citing Strickland v. Washington (1984), 466 U.S. 668,687-688. "To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v.Stojetz, 84 Ohio St.3d 452, 457, 1999-Ohio-464, citingStrickland, 466 U.S. at 694; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 22} Lette has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness and, assuming counsel's performance was ineffective, that the result of the proceeding would have been different.
 {¶ 23} The trial court struck Brummitt's testimony on the grounds that Lette failed to comply with Crim. R. 12.1, which provides as follows: "Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 24} The purpose of Crim. R. 12.1 is to provide the State "some protection against false and fraudulent claims of alibi often presented by the accused so near the close of the trial as to make it quite impossible for the state to ascertain any facts as to *Page 6 
the credibility of the witnesses called by the accused." State v.Thayer (1931), 124 Ohio St. 1, 4; State v. Jamison (1990),49 Ohio St.3d 182, 188 (citation omitted).
 {¶ 25} Lette's trial began on Tuesday, October 30. In arguing that Brummitt's testimony not be stricken, trial counsel stated "this witness just became known to me, I believe, on Friday, the names of these witnesses."[1] Thus, trial counsel only became aware of the alibi witness four days prior to trial, i.e. on Friday, October 26. Trial counsel cannot be faulted for failing to give notice seven days prior to trial when the witness only became known four days prior to trial. Under these circumstances, compliance with Crim. R. 12.1 was never an option.State v. Pittman, 2nd Dist. No. 18944, 2002-Ohio-2626, at ¶ 25 ("trial counsel was not notified of potential alibi witnesses until the Friday before the Tuesday trial"); State v. Alexander (Aug. 6, 1993), 6th Dist. No. E-91-86, 1993 Ohio App. LEXIS 3861, at *27 ("counsel could not be deemed ineffective for failing to file notice of an alibi of which said counsel had no notice").
 {¶ 26} Assuming, arguendo, the performance of trial counsel fell below an objective standard of reasonableness, Lette cannot show, with reasonable probability, that the outcome of the trial would have been different. At trial, Lette testified and presented the same alibi testimony that was struck when presented by Brummitt. "I was at Rock Creek with my cousin, his fiancée and some friends [on the weekend of August 3]. * * * Teri [Brummitt] picked me up about 4:00/4:15 [on Friday afternoon] and I stayed." Lette also testified that he does not own a vehicle, and, thus, would have been *Page 7 
unable to travel from the campground back to the Auction House where Townsend claimed he met her.
 {¶ 27} Where the defendant is allowed to present alibi testimony, numerous Ohio courts have held that the defendant cannot show prejudice as a result of trial counsel's failure to comply with Crim. R. 12.1.State v. Fink, 12th Dist. No. CA2005-11-480, 2006-Ohio-5657, at ¶ 11
("[f]ailure to file a notice of alibi is not prejudicial when the appellant is still given the opportunity to present an alibi at trial");State v. Moman, 7th Dist. No. 02 CO 52, 2004-Ohio-1387, at ¶ 54
("without a formal [Crim. R. 12.1] motion [being made], Appellant was able to present an alibi for the crimes and cannot argue his counsel's alleged failure in this respect"); State v. Grant, 12th Dist. No. CA2003-05-114, 2004-Ohio-2810, at ¶ 27 ("[b]ecause appellant was able to present an alibi for the crimes to the jury, we cannot conclude that trial counsel's failure to file the notice of alibi under Crim. R. 12.1 prejudiced the outcome of the case"); cf. Middletown v. Allen (1993), 63 Ohio App.3d 443, 448 ("[t]he failure to subpoena witnesses is not prejudicial if the testimony of those witnesses simply would have been corroborative").
 {¶ 28} The first assignment of error is without merit.
 {¶ 29} In the second and third assignments of error, Lette argues that his conviction of Aggravated Menacing is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 30} The Ohio Rules of Criminal Procedure provide that a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim. R. 29(A). "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the *Page 8 
evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.
 {¶ 31} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 319. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 32} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credibleevidence." Thompkins, 78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support the verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 25 (citation omitted). "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Id. *Page 9 
 {¶ 33} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at the syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387
(citation omitted). The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 34} In order to convict Lette of Aggravated Menacing, the State had to prove, beyond a reasonable doubt, that Lette "did knowingly cause Chery G. Townsend to believe that [he] would cause serious physical harm to the person of * * * Chery G. Townsend." Cf. R.C. 2903.21.
 {¶ 35} Lette argues that the State failed to present evidence that Townsend believed Lette would cause her serious physical harm. Lette notes that, at trial, the State only asked Townsend about "physical harm," not "serious physical harm." Cf. R.C. 2901.01(A)(5)(b) to (e), defining "serious physical harm to persons" as "[a]ny physical harm that carries a substantial risk of death; * * * involves some permanent incapacity * * * or that involves some temporary, substantial incapacity; * * * involves some permanent disfigurement or that involves some temporary, serious disfigurement; * * * *Page 10 
involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 36} "Townsend: I had walked towards [Lette]. I was probably within arm's length from him. And he had reached down. And I had noticed he had a gun sitting between his legs on the motorcycle. * * * At first I was just kind of stunned. He was like * * *, `Where are you going?' * * * I said, `I'm leaving.' He said, `Well, I can't have you. Nobody can.' He's like, `You're coming with me. * * *"
 {¶ 37} "Prosecutor: Did he ever threaten to cause you physical harm?"
 {¶ 38} "Townsend: `If I can't have you, nobody can.'"
 {¶ 39} "* * *"
 {¶ 40} "Prosecutor: While he was waving the gun around, did he make any threats to you that he was going to cause you physical harm?"
 {¶ 41} "Townsend: Other than when I'm standing right in front of him, no."
 {¶ 42} "* * *"
 {¶ 43} "Defense counsel: And you did not write out your own statement, is that correct? The officer wrote your statement, as well?"
 {¶ 44} "Townsend: Yes."
 {¶ 45} "Defense counsel: You were too intoxicated at that point to write out your statement?"
 {¶ 46} "Townsend: No. I was shaking."
 {¶ 47} The fact that the State did not specifically inquire about serious physical harm does not render his conviction unsupported by sufficient evidence. This court has explained that, in order to commit the crime of Aggravated Menacing, it is not necessary *Page 11 
for the defendant to explicitly threaten the victim. "[T]he threat need not actually be verbalized; it can be implied by the offender'sactions. * * * The key is whether the victim genuinely believes that he or she is facing serious physical harm to person or property." State v.Sobczak, 11th Dist. No. 2002-P-0020, 2003-Ohio-802, at ¶ 12, citingNiles v. Holloway (Oct. 3, 1997), 11th Dist. No. 96-T-5533, 1997 Ohio App. LEXIS 4517, at *5 (emphasis sic).
 {¶ 48} The determinative question in the present case is not whether the State specifically inquired about serious physical harm, but whether the trier of fact could infer that Townsend believed she faced serious physical harm. Here, Lette threatened Townsend with a gun, a weapon which will virtually always cause another serious physical harm, as defined in R.C. 2901.01(A)(5), when used with an intent to harm. Thus, the trier of fact could reasonably infer that Lette caused Townsend to believe that he would cause her serious physical harm, regardless of whether the State framed its questions in those terms. It is the substance of the evidence which matters, rather than the form of the question. See e.g. State v. Klickner, 4th Dist. No. 07CA855,2008-Ohio-4085, at ¶¶ 18-19 (a threat of "serious physical harm" may be inferred from the statement "I'm gonna get you bitch," where the victim testified she "believed that Klickner would harm her").
 {¶ 49} Lette also argues that Townsend was not a reliable witness, given her prior conviction for Attempted Forgery and motive for seeking revenge against Lette. These factors bear on Townsend's credibility, they do not render her testimony so untrustworthy as to render his conviction a miscarriage of justice. Although Townsend may have had a motive for seeking revenge against Lette, her testimony was internally *Page 12 
consistent and was corroborated in important respects by Duesler's testimony, i.e. Lette was brandishing a gun and yelling at Townsend. Lette admitted on the stand that he knew of no reason why Duesler would lie about the events of August 3, 2007.
 {¶ 50} The second and third assignments of error are without merit.
 {¶ 51} For the foregoing reasons, Lette's conviction for Aggravated Menacing in Painesville Municipal Court is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] It is uncertain, from the record before us, how many alibi witnesses defense counsel intended to present. *Page 1